THE STATE OF OHIO, APPELLANT, *v.* NAGLE, APPELLEE.

[Cite as State *v.* Nagle (1986), 23 Ohio St. 3d 185.]

(No. 85-894—Decided April 30, 1986.)

*John E. Shoop,* prosecuting attorney, *Edward C. Powers* and *Karen Lutzkowall,* for appellant.

*Stewart W. Savage* and *Albert L. Purola,* for appellee.

LOCHER, J. In this case, one of first impression in this state, we are called upon to determine whether appellee has a right to credit for time spent in a rehabilitation center. For the reasons to follow, we hold no such right exists and reverse the court of appeals on this issue.

I

Under Ohio law no statutory requirement is given the courts to credit time spent in a rehabilitation facility prior to commencement of sentence. While some states, such as California, expressly provide that time spent in a rehabilitation center be credited prior to commencement of sentence (see Cal. Penal Code Section 2900.5), Ohio's analogous statute, R.C. 2949.08, makes no similar provision. R.C. 2949.08(C) states:

"The jailer, administrator, or keeper in charge of a jail or workhouse shall reduce the sentence of a person delivered into his custody pursuant to division (A) of this section by the total number of days the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine his competence to stand trial or to determine sanity, and confinement while awaiting transportation to the place where he is to serve his sentence."

The operative language of the statute is: "confined for any reason arising out of the offense for which the prisoner was convicted and sentenced." Our preliminary inquiry must be to construe "confined" to ascertain whether a stay in a rehabilitation center is envisioned thereunder. It is also important in our analysis to note that appellee had been convicted and sentenced prior to his stay at the rehabilitation facility. The execution of sentence was suspended contingent upon probation which, in turn, was conditioned upon spending eighteen months in the rehabilitation facility. Examination of R.C. 2949.08(C) shows the legislative view of confinement includes "confinement in lieu of bail while awaiting trial, confinement for examination to determine his competence to stand trial or to determine sanity, and confinement while awaiting transportation to the place where he is to serve his sentence." It is instructive to note that in none of these specified circumstances may the defendant leave official custody of his own volition. In contrast, the rehabilitation facility imposed restrictions upon appellee's freedom of action to the

extent communications with family or friends were restricted or monitored. Yet, appellee's freedom of movement was not so severely restrained, *i.e.*, he indeed did voluntarily depart the facility.

R.C. 2951.04(F) indicates in pertinent part:

"* * * If, at any time after treatment [at a rehabilitation facility] has commenced, the treating facility or program reports to the probation officer that the offender fails to submit to or follow the prescribed treatment * * *, [s]uch failure and removal shall be considered by the court as a violation of the conditions of probation and dealt with according to law *as in other cases of probation violation.*" (Emphasis added.)

It seems to us apparent that no special treatment is afforded a stay in a rehabilitation facility beyond that accorded to any other condition of probation subsequently violated.[1]

## II

Appellee suggests that there is out-of-state precedent to support his position. Several of the cases cited by appellee, however, most notably *People* v. *Rodgers* (1978), 79 Cal. App. 3d 26, 144 Cal. Rptr. 602; *People* v. *Sylvestry* (1980), 112 Cal. App. 3d Supp. 1, 169 Cal. Rptr. 575; *People* v. *Stange* (1979), 96 Mich. App. 596, 283 N.W. 2d 806; and *Lock* v. *State* (Alaska 1980), 609 P. 2d 539, are distinguishable from the instant case. In *Rodgers* and *Sylvestry,* the relevant California credit for time statute, Cal. Penal Code Section 2900.5, expressly included rehabilitation facilities. In *Stange* the result was premised upon Michigan's *pre-sentencing* statute, Mich. Comp. Laws. Ann. Section 769.11b. Cf. *People* v. *Chamberlain* (1984), 136 Mich. App. 642, 358 N.W.2d 572 (contrary result reached in a post-sentencing case). The *Lock* case also involved a *pre-sentencing* statute, Alaska Stat. 11.05.040.

In short, "most jurisdictions do not credit time spent on probation upon subsequent revocation and resentencing." Annotation, Defendant's Right to Credit for Time Spent in Halfway House, Rehabilitation Center, or Other Restrictive Environment as Condition of Probation (1983), 24 A.L.R. 4th 789, 791. See, *e.g., State* v. *Babcock* (1979), 226 Kan. 356, 597 P. 2d 1117; *Grant* v. *State* (Nev. 1983), 659 P. 2d 878.

It is our view that appellee's position is not supported by the statute providing reduction of sentence for prior confinement, R.C. 2949.08, taken in the context of the examples of confinement therein and when read *in pari materia* with R.C. 2951.04(F), which indicates failure to follow prescribed rehabilitation treatment is to be treated the same as any other probation violation. Similarly, we are not persuaded by decisions in other jurisdictions which are based upon particular statutes inapposite to

---

[1] In such instances this court has indicated a judge is at liberty to impose an even greater sentence than originally suspended. *State* v. *McMullen* (1983), 6 Ohio St. 3d 244. See, also, *State, ex rel. Freeman,* v. *Dept. of Rehabilitation & Correction* (1982), 10 Ohio App. 3d 172.

our own.[2] Accordingly, we hold that when a defendant's sentence has been suspended and he has been placed on conditional probation pursuant to R.C. 2951.04 and later violates the terms of such probation, the trial court is not required to credit time spent in a rehabilitation facility against any sentence originally imposed. We therefore reverse the judgment of the court of appeals herein on the issue; the judgment of the trial court is reinstated.

*Judgment reversed in part*
*and judgment of trial court reinstated.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. As a general proposition, time spent in a residential treatment house as an express condition of probation should be credited towards the sentence imposed if and when the probation is revoked. Most jurisdictions, including Ohio, have enacted statutes providing that a defendant receive credit on a prison sentence for time during which the defendant was in "custody" or "confinement" as a result of the offense for which he is being sentenced. See Campbell, Law of Sentencing (1978) 262, Section 82; R.C. 2949.08.[3]

---

[2] Appellee also raised the point that the failure to give him credit would be a denial of the Equal Protection Clauses of the United States and Ohio Constitutions. This argument, however, is raised for the first time herein and was not argued or raised below. Accordingly, it is not timely raised.

Moreover it has been noted, "[t]hose courts which have faced the issue have been in general agreement that the right to credit for time spent in a restrictive environment other than jail as a condition of probation is not a question involving any right of the defendant under the state or federal constitutions." Annotation, Defendant's Right to Credit for Time Spent in Halfway House, Rehabilitation Center or Other Restrictive Environment as Condition of Probation (1983), 24 A.L.R. 4th 789, 792; *Harkins* v. *Wyrick* (C.A. 8, 1979), 589 F. 2d 387; *Makal* v. *Arizona* (C.A. 9, 1976), 544 F. 2d 1030, certiorari denied (1977), 430 U.S. 936.

[3] The issue of a defendant's right to credit is also treated in terms of time that the defendant has spent in "custody" or "confinement" in the American Bar Association Standards for Criminal Justice, the Model Penal Code and the Model Sentencing and Corrections Act. Standard 18-4.7 in III ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures (2 Ed. 1980), requires that a defendant receive credit for "all time spent in custody," with credit specifically granted for time spent in custody prior to trial, during trial, pending sentence, pending resolution of appeal and prior to the arrival at the institution where the sentence will be served. The Model Sentencing and Corrections Act (1978), Section 3-502, 10 U.L.A. (Specl. Pamph. 1985) 98, requires that a defendant be given credit "for all time spent in confinement" prior to the commencement of sentence. In contrast to the ABA Standards for Criminal Justice and the Model Sentencing and Corrections Act, the Model Penal Code (1962), Section 301.1(3), denies credit for time spent in jail as a condition of probation.

I believe R.C. 2949.08 requires that, when time is spent in a highly restrictive environment as a condition of probation, credit must be given if the nature of the restrictions was equivalent to "confinement" within the meaning of the statute. The majority holds that commitment that is not penal in character does not constitute "confine[ment] * * * arising out of the offense * * *," and would deny credit to anyone placed in any type of treatment facility except those specifically found to be penal. I think that under certain circumstances the restraints imposed as conditions of probation may be so substantial that the defendant is, in legal effect, "in custody," although on probation. See *McNeil* v. *Director, Patuxent Institution* (1972), 407 U.S. 245. The defendant need not be in a penal setting in order to be "confined" within the meaning of R.C. 2949.08. Custodial confinement takes many forms and has been interpreted to include time spent in a mental hospital,[4] a juvenile detention center,[5] a diagnostic center,[6] a hospital,[7] a halfway house,[8] and a hotel room.[9]

I believe that, in enacting R.C. 2949.08, the General Assembly intended that credit be given, upon sentencing, for time spent in special facilities and treatment programs. Upon revocation of probation, a defendant should be entitled to credit against his sentence on the original offense for time spent, as a condition of probation, in a rehabilitation program which imposes substantial restrictions on one's freedom of movement and behavior.

The restrictions imposed on the appellee in the "Help Is Possible" drug rehabilitation program were sufficiently severe to require credit for the time spent in the program. The "Help Is Possible" program is designed to meet the comprehensive needs of its drug abusing clientele. It is long-term, residential, highly structured and supervised. Residents of this program do not leave the premises, unsupervised, for an initial period of eight to ten months. The residents are not permitted to communicate, in writing, by phone or in visitation with former friends. Communication with family members is subject to screening and approval by the primary counselor. The staff are accustomed to working with court-referred clients and keeping the court apprised of the client's progress. Should the client leave treatment, the program immediately contacts the referring court.

---

[4] *People* v. *Gravlin* (1974), 52 Mich. App. 467, 217 N.W. 2d 404, 405.

[5] *State* v. *Hersman* (W. Va. 1978), 242 S.E. 2d 559, 561.

[6] *State* v. *Shaw* (1979), 202 Neb. 766, 772, 277 N.W. 2d 106, 111.

[7] *People, ex rel. Broderick,* v. *Noble* (1960), 26 Misc. 2d 903, 904, 207 N.Y.Supp. 2d 467, 469.

[8] *People* v. *Rodgers* (1978), 79 Cal. App. 3d 26, 144 Cal. Rptr. 602.

[9] *People, ex rel. Cohalan,* v. *Warden of City Prison* (S. Ct. 1950), 96 N.Y.Supp. 2d 749, 750.

The program emphasizes individual treatment and stresses behavior modification of its residents. Because of its intense emotional development and treatment, the program only takes twenty-five residents at a time. Finally, the resident must meet the requirements of his treatment program prior to being considered for entry into the final phase, which is reintegration to community living. The program imposed on the appellee was rigidly enforced and was emotionally and physically exhausting.

Appellee's decision to spend eighteen months in-residence at the facility could hardly be said to be "voluntary," nor was the institution one of his "choice." Instead, appellee opted for what he perceived to be the lesser of two evils, the alternative being four to fifteen years at the Ohio State Reformatory. The appellee was well aware that he would be returned to jail if he did not comply with the program's rules or if he left the program without permission. This, coupled with the fact that the appellee *did* leave the program, apparently preferring to be in jail, further establishes that the appellee was subjected to severe restraints on his freedom of movement.

Accordingly, I would affirm the court of appeals.