[Cite as *State v. Williams*, 2011-Ohio-6698.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO.  5-11-26

      v.

CHRISTOPHER M. WILLIAMS,        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2008 CR 00255

**Judgment Affirmed**

**Date of Decision:   December 27, 2011**

APPEARANCES:

    *Nathan T. Oswald*  for Appellant

    *Mark C. Miller and Drew A. Wortman*   for Appellee

**SHAW, J.**

{¶1} Although originally placed on our accelerated calendar, we elect, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.

{¶2} On October 21, 2008, defendant-appellant Christopher Williams ("Williams") was indicted on three counts of breaking and entering in violation of R.C. 2911.13(A), felonies of the fifth degree; one count of safecracking in violation of R.C. 2911.31(A), a felony of the fourth degree; and one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fifth degree. On March 16, 2009, Williams entered guilty pleas to all indicted charges.

{¶3} On May 12, 2009, the trial court sentenced Williams to serve a single sentence of five years of community control for all five counts. As a condition of his community control, the trial court ordered Williams to enter into and complete a term of thirty days in the Hancock County Adult Probation Department's Electronic Monitoring Program at his own expense. Notably, this condition only required Williams to be home by curfew. Williams successfully completed the electronically monitored portion of his community control.

{¶4} However, on December 18, 2009, Williams' probation officer filed a motion to revoke his community control for failing to be home by the curfew, for failing to comply with treatment, for failing to report as required to his probation officer, for failing to notify his probation officer of his change of address, and for

his use of marijuana. Each of these constituted violations of Williams' community control conditions. A hearing on the motion was held on December 21, 2009, and Williams admitted to the violations. The trial court then sentenced Williams to eleven months in prison for his convictions on each of the breaking and entering counts and on the receiving stolen property count, all to run concurrently. Williams was sentenced to seventeen months in prison for his conviction for safecracking, with this sentence to be served consecutively to the others, for a total prison term of twenty-eight months. Williams appealed from this sentence.

{¶5} On appeal, this court reversed the sentence of the trial court because it ordered a lump sentence of five years community control rather than sentencing Williams for each individual offense as required by statute. A resentencing hearing was held on May 5, 2011. The trial court imposed the previous prison sentence of twenty-eight months. The trial court granted Williams credit for 523 days of time served. At the resentencing hearing, Williams asked for an additional 30 days of credit for time served for the time he spent subject to electronic monitoring. The trial court subsequently denied Williams' request. Williams appeals from this judgment and raises the following assignments of error.

**FIRST ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED BY DENYING [WILLIAMS] JAIL TIME CREDIT FOR 30 DAYS OF ELECTRONIC**

**HOME MONITORING SERVED AS A COMMUNITY CONTROL CONDITION.**

**SECOND ASSIGNMENT OF ERROR**

**THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING AN UNREASONABLY HARSH SENTENCE FOR [WILLIAMS'] SAFECRACKING CONVICTION.**

**THIRD ASSIGNMENT OF ERROR**

**[WILLIAMS] WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL HIS [SIC] BY TRIAL COUNSEL'S FAILURE TO ADVOCATE FOR COMMUNITY CONTROL.**

*First Assignment of Error*

{¶6} The first assignment of error claims that the trial court erred in denying credit to Williams for the thirty days he spent on electronic monitoring after his conviction.

{¶7} Section 2949.08 of the Revised Code provides, in pertinent part:

**(A) When a person who is convicted of or pleads guilty to a felony is sentenced to a community residential sanction in a community-based correctional facility pursuant to section 2929.16 of the Revised Code or when a person who is convicted of or pleads guilty to a felony or a misdemeanor is sentenced to a term of imprisonment in a jail, the judge or magistrate shall order the person into the custody of the sheriff or constable, and the sheriff or constable shall deliver the person with the record of the person's conviction to the jailer, administrator, or keeper, in whose custody the person shall remain until the term of imprisonment expires or the person is otherwise legally discharged.**

\* \* \*

**(C)(1) If the person is sentenced to a jail for a felony or a misdemeanor, the jailer in charge of a jail shall reduce the sentence of a person delivered into the jailer's custody pursuant to division (A) of this section by the total number of days the person was confined for any reason arising out of the offense for which the person was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the person's competence to stand trial or to determine sanity, and confinement while awaiting transportation to the place where the person is to serve the sentence.**

Ohio Appellate Courts have reached different conclusions as to whether electronic monitoring constitutes "confinement" for purposes of calculating credit for time served.

{¶8} In *State v. Holmes*, 6th Dist. No. L-08-1127, 2008-Ohio-6804, the defendant was convicted of one count of possession of crack cocaine and sentenced to community control. The defendant was placed on electronically monitored house arrest ("EMHA") for a period of thirty days as part of his community control. After successfully completing the electronic monitoring portion of his sentence, the defendant violated the terms of his community control and was sentenced to prison. The defendant requested credit for time served for the ninety days he spent on EMHA. The trial court denied his request and the defendant appealed.

{¶9} The court in Holmes determined that "confinement" as used in R.C. 2949.08(C) is *"synonymous"* with the term "detention" as defined in R.C.

2921.01(E).  *Id*. at ¶12.  Based on this rationale, the court relied heavily on a Fifth

District case, *In re Nitaleen Gould*, 5th Dist. No. 07-CA-0099, 2008-Ohio-900 and

arrived at the following conclusion.

> **In *Gould*, supra, the case involved a minor defendant who had been adjudicated delinquent for the charge of gross sexual imposition.  The defendant was placed on community control, and when she violated the terms of that sentence, she was restored to probation.  As part of her probation, she was placed on electronically-monitored house arrest.  At some point during this portion of her sentence, the defendant cut off the ankle bracelet portion of her electronic monitoring device and left home without permission.  As a result of her actions, she was charged with delinquency by reason of committing escape, in violation of R.C. 2921.034.**
>
> **The question for the court in *Gould* was whether the defendant's electronic home monitoring constituted a form of detention pursuant to R.C. 2921.01(E), so as to support her conviction for the charge of escape.  The court, relying solely on the current version of the statute-which, unlike the previous versions, makes no exclusion for supervision and restraint incidental to probation, parole and release on bail-determined that it was.  On the basis of that determination, the court concluded that the defendant's adjudication for the charge of escape was not against the sufficiency of the evidence.**
>
> **We agree with the court's analysis in *Gould*, and find that it applies equally in cases where electronic monitoring is imposed pursuant to community control.**
>
> **Taking the analysis a step further, we find that the interests of justice require that where an individual can be prosecuted for escape from electronic monitoring imposed pursuant to community control or probation, that individual should be entitled to credit for time served in that way.  Stated otherwise,**

> **if electronic monitoring is "detention" for prosecuting the crime of escape, it should likewise be "detention" for time-crediting purposes.**

*Holmes*, at ¶¶ 16-19.[1]

{¶10} Notably, the court in *Gould* did not specifically address the issue of whether an offender is entitled to credit for time served for the period of time he or she spent on post-conviction electronic home monitoring.

{¶11} However, when confronted with this issue, the same court that decided *Gould* elected not to follow the reasoning in *Holmes*, but instead resolved the question by arriving to the opposite conclusion. In *State v. Tabor*, 5th Dist. No. 111 CA 33, 2011-Ohio-3200, the Fifth District held that the defendant, who was convicted of a felony offense, was *not* entitled to credit for time served under R.C. 2949.08(C) for time spent under electronic monitoring as condition of his community control, which required him to be home between the hours of 10:00 p.m. and 6:00 a.m. In doing so, the court in *Tabor* was strongly persuaded by reasoning of the Tenth District in *State v. Blankenship*, 192 Ohio App.3d 369, 2011-Ohio-1601, 949 N.E.2d 1087.

---

[1] In *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, the Supreme Court of Ohio concluded that *pretrial* electronic home monitoring does not constitute detention for the purpose of prosecuting the crime of escape because it was not intended to be a form of detention under R.C. 2921.01(E). However, the Supreme Court has not resolved the issue of whether post-conviction electronic home monitoring constitutes detention under R.C. 2921.01(E).

{¶12} In *Blankenship*, the defendant was convicted of a misdemeanor offense and placed on a ninety-day term of EMHA. The defendant subsequently failed to complete the conditions of his probation, which prompted the trial court to revoke his probation and impose a jail sentence. The defendant then requested credit for time served for the time he spent on EMHA, which the trial court denied.

{¶13} On appeal, the Tenth District determined that the defendant was not entitled to credit for time served for the time he spent on EMHA. The court in *Blankenship* began its analysis by examining the word "confinement" used in R.C. 2949.08(C), and noting that "confinement" is not separately defined under R.C. 2929.01. *Id*. at ¶ 9. The court acknowledged that some courts have determined "confinement" to be *synonymous* with "detention," but that those cases were not binding on its decision and ultimately concluded that it was not necessary to determine whether the two words have the same meaning when resolving this issue.

{¶14} Rather, the court in *Blankenship* reviewed decisions of the Supreme Court of Ohio to evaluate how "confinement" is considered in the context of calculating an offender's credit for time served when the offender has spent time in a residential rehabilitation facility and a community-based corrections facility as a condition of community control.

{¶15} In *State v. Nagle* (1986), 23 Ohio St.3d 185, 23 OBR 348, 492 N.E.2d 158, the Supreme Court considered whether time spent in a residential rehabilitation facility as a condition of probation constituted "confinement" under R.C. 2949.08(C). The Supreme Court reversed the court of appeals, which gave Nagle time served credit for time he spent in the rehabilitation facility. *Id.* at 188. The court in *Blankenship* noted that

> **Central to this holding was the Supreme Court's observation that "in none of [the examples of confinement under R.C. 2949.08(C) ] may the defendant leave official custody of his own volition." By contrast, although the rehabilitation facility imposed restrictions on the defendant's freedom of communication with those outside the facility, "[his] freedom of movement was not so severely restrained, i.e., he indeed did voluntarily depart the facility." Therefore, time spent in this residential rehabilitation facility as a condition of postconviction probation was not a form of "confinement" eligible for time-served credit under R.C. 2949.08(C).**
>
> **By contrast, in *State v. Napier* (2001), 93 Ohio St.3d 646, 758 N.E.2d 1127, the Supreme Court of Ohio concluded that time spent in a community-based correctional facility constituted confinement under R.C. 2967.191. * * * The Supreme Court noted that although the defendant could leave the facility after the "lockdown" period, his ability to leave was subject to requesting permission and submitting a detailed written description of when he was leaving the facility, where he was going, and when he planned to return. Because the defendant was not free to come and go as he wished and "was subject to the control of the staff regarding personal liberties," the defendant's time in the community-based correctional facility constituted "confinement" for purposes of R.C. 2967.191.**

*Blankenship*, 2011-Ohio-1601 at ¶¶ 12-13 (internal citations omitted). [2]

**{¶16}** In applying this framework set forth by the Supreme Court to the case before it, the court in *Blankenship* noted that the order imposing EMHA permitted the defendant to leave his home for both anger-management treatment and employment. The court concluded that "like the defendant in *Nagle,* the appellant was apparently able to leave the home of his own volition, because he must have done so to violate the terms of his EMHA. The fact that he faced possible consequences for choosing to violate his EMHA did not transform the EMHA into a condition imposing 'such a restraint on [his] freedom of movement that he [could not] leave official custody of his own volition.' " *Id.* at ¶ 16 quoting *State v. Slager*, 10th Dist. No. 08AP-581, 2009-Ohio-1804, ¶ 20 (concluding that pre-arrest hospitalization for treatment of injuries sustained while fleeing the police did not constitute confinement for purposes of R.C. 2967.191); see also *State v. Ober*, 2nd Dist. No. 2003-CA-27, 2004-Ohio-3568, ¶ 20 (determining that the defendant had not been confined for purposes of R.C. 2967.191 because his house arrest "was less restrictive, or at least no more restrictive, than the situation of the defendant in *State v. Nagle*").

---

[2] As noted in *Blankenship*, R.C. 2949.08(C) and R.C. 2967.191 contain nearly identical language with respect to the provision for the calculation of credit for time served and therefore the analysis of this issue under R.C. 2967.191 is applicable to the matter at hand.

{¶17} Even though the court in *Blankenship* specifically limited its holding to misdemeanor offenses, we, like the court in *Tabor*, find the underlying rationale of *Blankenship* to be persuasive and applicable to felony offenses.

{¶18} Furthermore, we note that the conditions of Williams' electronic monitoring were even less restrictive than the order imposing EMHA in *Blankenship*. Unlike the defendant in *Blankenship*, Williams was not on house arrest, which requires the offender to remain in the home except when authorized to leave for employment or other designated purposes. But rather, Williams was placed on electronic monitoring, which simply involves the use of an electronic device to monitor and determine an individual's location. R.C. 2929.01(TT) and (UU).

{¶19} In reviewing the conditions of electronic monitoring imposed on Williams as a part of his community control, the only restriction on Williams' movements was that he had to "abide by curfew, which will be set out by the Adult Probation Officer." (State's Ex. 2, 12/21/09). Other than this restriction, Williams had unfettered liberty to leave his house on his own volition. Consistent with the reasoning expressed in *Nagle* and *Blankenship*, we conclude that under the terms of Williams' electronic monitoring his freedom of movement was not so severely restrained so as to constitute "confinement" under R.C. 2949.08(C). The first assignment of error is overruled.

*Second Assignment of Error*

**{¶20}** In the second assignment of error, Williams argues that the trial court abused its discretion by imposing an unusually harsh sentence for safecracking without any evidence that it was any more serious than any other offense of safecracking. Specifically, Williams alleges that the trial court abused its discretion in applying the factors set forth in R.C. 2929.12(B).

> **[A] court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in [R.C. 2929.11]. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.**

R.C. 2929.12(A). To find an abuse of discretion, the record must reveal that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Trial courts have discretion to impose a prison sentence within the statutory range for the offense from which the conviction stems. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

**{¶21}** Here, Williams claims that the trial court's application of the factors was arbitrary because the trial court had no evidence that this safecracking offense

-12-

was worse than any other safecracking offense. However, the record reflects that the trial court did consider the sentencing factors set forth in R.C. 2929.12. (May 5, 2011 Hrg. at 11). The pre-sentence report reveals that Williams has an extensive juvenile record and has broken the law as an adult on more than one occasion. The victims in this case were churches and a family center. Williams has demonstrated a history of theft charges and violating court orders and admits to occasional marijuana use. According to the institutional summary report, Williams was disciplined for stealing from the café twice and for disobeying a direct order. The sentence imposed by the trial court was within the statutory range for a felony of the fourth degree. Contrary to Williams' claim, the record demonstrates that the trial court did apply the appropriate factors under R.C. 2929.12 and that its application of those factors in sentencing Williams was not unreasonable, arbitrary, or unconscionable.

{¶22} Although Williams correctly alleges that the factors in R.C. 2929.12(B) do not indicate that this offense of safecracking was more serious than any other safecracking charge, the analysis does not end there. The trial court must apply the factors in R.C. 2929.12(C), (D), & (E) as well. There were no applicable factors in R.C. 2929.12(C) which would reduce the seriousness of the offense. A review of the record indicates that Williams is at a high risk for recidivism due to his history of juvenile and adult criminal convictions and his

failure to favorably respond to prior sanctions. R.C. 2929.12(D)(2) and (3). Williams was sent to prison after his community control was revoked a mere seven months after it was ordered. R.C. 2929.12(D)(1). The only factor that reduced the likelihood of recidivism was that Williams expressed some remorse by cooperating with the police, which was why Williams was originally placed upon community control. R.C. 2929.12(E). Given the facts before it, the trial court did not abuse its discretion in applying the factors set forth in R.C. 2929.12. Thus, the second assignment of error is overruled.

### *Third Assignment of Error*

**{¶23}** Finally, Williams alleges that he was denied effective assistance of counsel because his attorney did not advocate for community control. "Reversal of convictions on ineffective assistance requires the defendant to show 'first that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.'" *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶105, 772 N.E.2d 81. The defendant must show that there was a reasonable probability that but for counsel's error, the result of the trial would have been different. *Id*. at ¶108. See also *State v. Risch*, 3d Dist. No. 16-10-14, 2011-Ohio-3633 and *State v. Baughman*, 3d Dist. No. 1-10-34, 2010-Ohio-4951.

**{¶24}** Williams argues that counsel was ineffective because she did not argue for community control at the sentencing. The sentencing hearing from which Williams is appealing occurred after Williams was originally, though incorrectly, sentenced to community control for the offenses. Then community control was revoked for the numerous violations and he was sentenced to prison for the offenses. On appeal from that sentence, this court remanded to have the original sentence corrected. This appeal is from that resentencing. Thus, community control was not a likely outcome regardless of what counsel argued. Regardless of that fact, counsel argued to have the trial court release Williams with time served by imposing concurrent sentences rather than consecutive sentences. (May 5, 2011 Hrg. at 8). A review of the record does not indicate that counsel's performance was deficient or that any other course of action would have resulted in a different outcome. Therefore, the third assignment of error is overruled.

**{¶25}** For all these reasons, the judgment of the Hancock County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**

-15-

Case No. 5-11-26

**WILLAMOWSKI, J. Dissenting in Part and Concurring in Part.**

{¶26} I dissent from the majority as to the first assignment of error because I would follow the logic of the Sixth District Court of Appeals in *State v. Holmes.* Under the current version of R.C. 2921.01(E), the statutory definition of "detention" does not exclude supervision and restraint incidental to community control. *In re Nataleen Gould*, 5th Dist. No. 07-CA-0099, 2008-Ohio-900.

> **If [a] person is sentenced to jail for a felony or a misdemeanor, the jailer in charge of a jail shall reduce the sentence of a person delivered into the jailer's custody * * * by the total number of days the person was confined for any reason arising out of the offense for which the person was convicted and sentenced * * *.**

R.C. 2949.08(C)(1). In *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, the Ohio Supreme Court determined that pre-sentence electronic home monitoring is not detention and thus not subject to either credit for time served or as a basis for an escape charge. Id. However, the Supreme Court did not address the issue as to post-conviction electronic home monitoring. The Supreme Court was very clear to distinguish pre-sentence forms of detention from post-conviction forms of detention. Id. at ¶70, 72.

{¶27} In *State v. Holmes*, 6th Dist. No. L-08-1127, 2008-Ohio-6804, the defendant was convicted of one count of possession of crack cocaine, a felony of the fourth degree, and sentenced to community control. As part of his community control, he was placed on electronically monitored house arrest for 30 days, which

-16-

was completed without violation. Subsequently he violated the terms of his community control and was sentenced to prison.

> **The issue in the instant case is whether appellant, while on electronically monitored house arrest in connection with his community control was "confined" within the meaning of R.C. 2949.08(C)(1) and, thus, eligible for credit for time so served. The term "confinement" as used in R.C. 2949.08(C)(1) has been deemed synonymous with the term "detention" as defined in R.C. 2921.01(E). \* \* \***

> **\* \* \***

> **In *Gould*, supra, the case involved a minor defendant who had been adjudicated delinquent for the charge of gross sexual imposition. The defendant was placed on community control, and when she violated the terms of that sentence, she was restored to probation. As part of her probation, she was placed on electronically-monitored house arrest. At some point during this portion of her sentence, the defendant cut off the ankle bracelet portion of her electronic monitoring device and left home without permission. As a result of her actions, she was charged with delinquency by reason of committing escape, in violation of R.C. 2921.034.**

> **The question for the court in *Gould* was whether the defendant's electronic home monitoring constituted a form of detention pursuant to R.C. 2921.01(E), so as to support her conviction for the charge of escape. The court, relying solely on the current version of the statute-which, unlike the previous versions, makes no exclusion for supervision and restraint incidental to probation, parole and release on bail-determined that it was. On the basis of that determination, the court concluded that the defendant's adjudication for the charge of escape was not against the sufficiency of the evidence.**

> **We agree with the court's analysis in *Gould*, and find that it applies equally in cases where electronic monitoring is imposed pursuant to community control.**
>
> **Taking the analysis a step further, we find that the interests of justice require that where an individual can be prosecuted for escape from electronic monitoring imposed pursuant to community control or probation, that individual should be entitled to credit for time served in that way. Stated otherwise, if electronic monitoring is "detention" for prosecuting the crime of escape, it should likewise be "detention" for time-crediting purposes.**

*Holmes*, at ¶¶12-19. The logic in *Holmes* is extremely persuasive. If Williams had absconded while on electronic monitoring supervision, he could have been charged with escape. Thus, he should be entitled for time-served credit for the time he was monitored. Given the logic of *Gapen*, I find the logic of *Holmes* to be much more persuasive than that of *Blankenship* and *Tabor*. Therefore, I would dissent from the majority on the first assignment of error. There clearly is a dispute among the districts and this is an issue that needs to be addressed by the Supreme Court. Thus, I would also recommend that the parties apply for certification of the conflict to the Supreme Court for a determination.

{¶28} I concur in the remaining assignments of error.