[Cite as *State v. Hurst*, 2018-Ohio-142.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO.   CA2017-05-077 |
| Plaintiff-Appellant, | : | |
| | | O P I N I O N |
| | : | 1/16/2018 |
| - vs - | | |
| | : | |
| ASHLEY N. HURST, | : | |
| | | |
| Defendant-Appellee. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32674

David P. Fornshell, Warren Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellant

Kaufman & Florence, William Robert Kaufman, 144 East Mulberry, P.O. Box 280, Lebanon, Ohio 45036, for defendant-appellee

**S. POWELL, J.**

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Warren County Court of Common Pleas granting defendant-appellee, Ashley N. Hurst, 17 days of jail-time credit for the time she spent on electronically monitored house arrest ("EMHA") in accordance with this court's prior decision in *State v. Fillinger*, 12th Dist. Madison No. CA2016-04-015, 2016-Ohio-8455.  For the reasons outlined below, we reverse the trial

court's decision and remand for further proceedings.

**Facts and Procedural History**

{¶ 2}   On January 17, 2017, the Warren County Grand Jury returned an indictment charging Hurst with single counts of unauthorized use of property in violation of R.C. 2913.04(A) and misuse of credit cards in violation of R.C. 2913.21(B)(2), both fifth-degree felonies.  Hurst was subsequently arraigned and released on her own recognizance upon entering a plea of not guilty to both charges.

{¶ 3}   On March 1, 2017, after accepting the state's plea offer, Hurst pled guilty to the unauthorized use of property charge in exchange for dismissal of the misuse of a credit card charge.  After accepting Hurst's guilty plea, the trial court committed Hurst to the Warren County Jail pending sentencing.  Two weeks later, on March 15, 2017, the trial court sentenced Hurst to three years of community control.  As part of her community control sanctions, Hurst was ordered to enter and successfully complete the Warren County drug court program, including any aftercare as directed.

{¶ 4}   On March 24, 2017, the trial court issued an order directing the Warren County jail to place Hurst on EMHA prior to her release.  Thereafter, on April 11, 2017, several days after Hurst was released, Hurst's probation officer filed a report alleging Hurst had violated the conditions of her community control by submitting a positive drug screen indicating she had used opiates.  The report also alleged that Hurst had admitted to using heroin.

{¶ 5}   On April 12, 2017, the trial court held a hearing on the community control violation, wherein Hurst pled guilty to violating community control as alleged.  After entering her guilty plea, which the trial court accepted, the trial court continued Hurst on community control with more restrictive sanctions and further ordered Hurst to remain in the Warren County drug court program.

{¶ 6}   On April 19, 2017, Hurst's probation officer filed another report alleging Hurst

had again violated the conditions of her community control by submitting a positive drug screen which indicated she had used opiates. That same day, the trial court held a hearing on Hurst's reported violation, wherein Hurst once again pled guilty to violating community control as alleged. After accepting Hurst's guilty plea, the trial court committed Hurst to the Warren County Jail pending a further review hearing.

{¶ 7} On April 26, 2017, the trial court held a review hearing and again continued Hurst's community control with even more restrictive sanctions. The trial court also ordered Hurst be placed on EMHA for 60 days. As part of this hearing, and over the state's objection, the trial court then granted Hurst 129 days of jail-time credit, which in accordance with this court's prior decision in *Fillinger*, included 17 days that Hurst had previously spent on EMHA. It is undisputed that while on EMHA, Hurst could have left her home on her own volition at any time and was in fact permitted to leave her home to attend AA and NA meetings for nine hours a week, her cognitive intervention program for three hours a week, and to visit her probation officer one hour a week, as well as to attend court hearings and for any medical emergencies. Hurst was also permitted to return to her previous residence to pick up her belongings so that she could move to a new home.

{¶ 8} With leave from this court, the state now appeals the trial court's decision to grant Hurst 17 days of jail-time credit for the time she spent on EMHA in accordance with this court's prior decision in *Fillinger*.

**The Holding in *State v. Fillinger*, Jail-Time Credit, and EMHA**

{¶ 9} In *Fillinger*, the majority opinion, authored by Judge Robert Ringland and concurred in by Judge Mike Powell, held that "house arrest" satisfied the definition of "confined" for purposes of determining jail-time credit in accordance with R.C. 2967.191 and 2949.08. In so holding, the majority relied on the statutory definition of "house arrest" as provided in R.C. 2929.01(P), which defines that term as "a period of *confinement* of an

- 3 -

offender that is in the offender's home * * *." (Emphasis added.) Using a strict textual interpretation of these statutes, as opposed to the "restraint of movement" reasoning as set forth by the Tenth District Court of Appeals in *State v. Blankenship*, 192 Ohio App.3d 639, 2011-Ohio-1601 (10th Dist.) and its progeny, the majority held that "when 'house arrest,' is imposed as a community control sanction pursuant to R.C. 2929.17 for a conviction of a felony, it is 'confinement.'" *Fillinger*, 2016-Ohio-8455 at ¶ 12. Explaining this holding further, the majority stated:

> The cases relied upon in *Blankenship*, i.e., [*State v. Nagle*, 23 Ohio St.3d 185 (1986) and *State v. Napier*, 93 Ohio St.3d 646 (2001)], are instructive as to whether placement in a rehabilitation facility or community-based correctional facility may constitute confinement. However, unlike the present case involving house arrest imposed as a community control sanction, placement in a "rehabilitation facility" and the correctional facility in *Nagle* and *Napier*, respectively, are not defined by the Ohio Revised Code as "confinement."

*Id.* at ¶ 13.

{¶ 10} Judge Robert Hendrickson was unconvinced by the majority's position. Instead, Judge Hendrickson found more compelling the rationale set forth by the Tenth District's decision in *Blankenship* and the First District Court of Appeals' decision in *State v. Kleinholz*, 1st Dist. Hamilton No. C-150276, 2015-Ohio-4280, both cases that applied the "restraint of movement" reasoning taken from the Ohio Supreme Court's decisions in *Nagle* and *Napier*. Judge Hendrickson summarized the "restraint of movement" reasoning: in determining whether a defendant is entitled to jail-time credit for being "confined," the proper consideration is whether the defendant's freedom of movement was restrained such that the defendant could not leave his or her home on his or her own volition. *Fillinger* at ¶ 18-27.

{¶ 11} Thereafter, in applying the "restraint of movement" reasoning to the facts in *Fillinger*, Judge Hendrickson concluded:

The circumstances presented in the present case are similar to those of *Blankenship* and *Kleinholz*. Fillinger was placed on EMHA, but was permitted to leave his home at his own volition. Fillinger was lawfully permitted to leave his home to meet with probation, to attend court, or for medical emergencies. Fillinger was also physically capable of leaving his home for any other activity or event he wished to attend as his ability to leave his home was not subject to the control of others. *Compare Napier*, 93 Ohio St.3d at 648. The fact that Fillinger faced possible consequences for choosing to leave his home and violate his EMHA "did not transform the EMHA into a condition imposing 'such a restraint on [his] freedom of movement that he [could not] leave official custody of his own volition.'" *Blankenship*, 192 Ohio App.3d 639, 2011-Ohio-1601 at ¶ 16, quoting [*State v. Slager*, 10th Dist. Nos. 08AP-581, 08AP-582, 08AP-709, and 08AP-710, 2009-Ohio-1804, ¶ 20]. As Fillinger's freedom of movement was not restrained, I would find that he was not "confined" and, therefore, is not entitled to jail-time credit for the days he spent on EMHA.

In concluding that Fillinger is not entitled to jail-time credit for his EMHA, I reject the majority's assertion that inclusion of the word "confinement" in the definition of "house arrest" under R.C. 2929.01(P) necessarily entitles a defendant on EMHA to jail-time credit.

As the Tenth District noted in *Blankenship*:

> The term "confinement" is not separately defined under R.C. 2929.01. However, the fact that house arrest is defined using the term "confinement" does not necessarily mean that it qualifies [for] time-served credit under R.C. 2949.08(C)(1). "[W]here two statutes do not expressly state that the word has the same meaning in both, it is apparent that it might have different meanings." *State v. Dickinson*, (1971), 28 Ohio St.2d 65, 70, 57 O.O.2d 255, 275 N.E.2d 599.

*Blankenship* at ¶ 9.

Under the approach set forth by the majority, any individual placed on EMHA would automatically be entitled to jail-time credit, regardless of the terms of his or her community control. Take for instance a defendant placed on EMHA that is permitted to leave his home and move around the county so long as he is home for certain, set hours. *See, e.g., State v. Tabor*, 5th Dist. Richland No. 11CA33, 2011-Ohio-3200; *State v. Williams*, 3d Dist. Hancock No. 5-11-26, 2011-Ohio-6698. Under the

majority's approach, this defendant would be entitled to jail-time credit, regardless of the fact that his movement was not restrained, because he was under "house arrest" and was required to abide by a curfew. Such an approach does not comport with the holdings and rationales expressed by the Ohio Supreme Court in *Nagle* and *Napier*.

*Fillinger*, 2016-Ohio-8455 at ¶ 24-26.

{¶ 12} Following this court's decision in *Fillinger*, this court was faced with a similar issue regarding a trial court's decision to award jail-time credit in *State v. Bowling*, 12th Dist. Warren Nos. CA2017-02-020, CA2017-02-021, and CA2017-03-032, 2017-Ohio-8539. In that case, with leave from this court, the state appealed the trial court's decision granting jail-time credit to three appellees for the time they spent subject to a curfew mandated by the trial court following their respective convictions, two of whom were GPS monitored. The trial court, in interpreting this court's decision in *Fillinger*, determined that all three appellees were entitled to jail-time credit for their time spent on curfew since their curfews required each of them to be at their respective homes during certain hours of the day, thus equating being placed on a curfew the same as being "confined" for purposes of calculating jail-time credit under R.C. 2967.191 and 2949.08.

{¶ 13} In an opinion again authored by Judge Ringland, this court disagreed with the trial court's decision and determined the trial court erred by granting jail-time credit. In so holding, Judge Ringland distinguished the facts in *Bowling* from the facts in *Fillinger*. Specifically, Judge Ringland determined that because "curfew is not defined as a period of 'confinement' under the terms of the Ohio Revised Code," the trial court's reliance on *Fillinger* to support its decision to grant jail-time credit to any of the three appellees at issue was misplaced. *Id.* at ¶ 17-18. As a result, as opposed to the statute addressing EMHA at issue in *Fillinger*, having no statute defining "curfew" as a period of "confinement," Judge Ringland applied the "restraint of movement" reasoning to find appellees were not

"confined" for purposes of calculating jail-time credit for their time spent on curfew since, aside from certain hours in the day requiring them to be at home, "appellees had freedom of movement and were not in custody or restrained from movement." *Id.* at ¶ 22.

{¶ 14} I concurred with Judge Ringland's decision and judgment rendered, choosing not to submit a separate concurring opinion. Judge Hendrickson, however, did submit a separate concurrence, wherein he reiterated his dissent in *Fillinger* that in determining whether a defendant is "confined," and therefore entitled to jail-time credit:

> a court must consider the circumstances surrounding the restraint of the defendant's physical movements without regard to whether the defendant's movements constitute a violation of the terms of his or her community control or probation.

*Id.* at ¶ 26.

Concluding, Judge Hendrickson, citing to both *Blankenship* and *Kleinholz*, stated:

> Regardless of whether a defendant is placed on [EMHA], GPS monitoring with a curfew, or nonelectronically monitored curfew, the proper focus is whether the defendant's freedom of movement was restrained such that the defendant could not leave his or her own home on his or her own volition. As [the three appellees'] freedom of movement was not restrained and they were free to leave their homes whenever they chose while on curfew and GPS monitored curfew, I agree with the majority's determination that they were not "confined" and, therefore, were not entitled to jail-time credit.

*Id.*

### Jail-Time Credit for Time Spent on EMHA

{¶ 15} After a thorough review of the record, I find the dissent authored by Judge Hendrickson in *Fillinger*, coupled with his separate concurrence in *Bowling*, the appropriate manner for which a trial court should determine whether a defendant is entitled to jail-time credit. This is not a novel approach for it has been adopted by several other districts throughout the state as shown in *Blankenship* and *Kleinholz*, as well as the Fifth and Second appellate districts in *State v. Franklin*, 5th Dist. Stark No. 2011-CA-00055, 2011-Ohio-4078

and *State v. Ober*, 2d Dist. Champaign No. 2003-CA-27, 2004-Ohio-3568, respectively. Therefore, just as Judge Hendrickson stated previously, I believe that in determining whether a defendant is "confined," and therefore entitled to jail-time credit, the proper focus must be on whether the defendant's freedom of movement was restrained such that the defendant could not leave his or her own home on his or her own volition. In making such a determination, the trial court should not be concerned in any way with whether the defendant's movements would constitute a violation of the terms of his or her community control or probation.

{¶ 16} With these principles in mind, and when considering the facts and circumstances of this case, I find it clear that Hurst's freedom of movement was not in any way restrained such that she could not leave her home on her own volition, despite the fact that it would constitute a violation of her community control and potentially subject her to prosecution for escape, so as to entitle her to receive jail-time credit for her time spent on EMHA. As noted by the Sixth District Court of Appeals in *State v. Holmes*, 6th Dist. Lucas No. L-08-1127, 2008-Ohio-6804, and quoted by Judge Hendrickson in his dissent in *Fillinger*, "'in determining whether a defendant has been confined for purposes of the award of jail-time credit, it is irrelevant whether he [or she] could be prosecuted for escape.'" *Fillinger*, 2016-Ohio-8455 at ¶ 23, quoting *Holmes* at ¶ 19. I agree.

{¶ 17} Moreover, as the record in this case plainly reveals, Hurst was permitted to leave her home to attend AA and NA meetings for nine hours a week, her cognitive intervention program for three hours a week, and to visit her probation officer one hour a week, as well as to attend her court hearings and for any medical emergencies. Hurst was also permitted to return to her previous residence in order to retrieve some of her belongings so that she could move to a new home. Therefore, since Hurst's freedom of movement was not in any way restrained such that she could not leave her home on her own volition, and

she was in fact permitted to leave her home for certain purposes, I find the trial court erred by awarding Hurst 17 days of jail-time credit for the time she spent on EMHA. Accordingly, the trial court's decision is reversed and the state's single assignment of error is sustained.

**Conflicting Cases Requiring En Banc Review?**

{¶ 18} Upon review, differing panels from this court have now come to seemingly conflicting decisions in this case and that of *Fillinger* as to whether a defendant is entitled to jail-time credit for time spent on EMHA following his or her conviction. Under such circumstances, App.R. 26(A)(2)(a) allows for en banc consideration by all full-time judges of this court upon a determination that two or more decisions of the court on which they sit are found to be in conflict by a majority of the en banc court. App.R. 26(A)(2)(b) allows for this court to order en banc consideration sua sponte. However, this court feels it more appropriate for one, if not both, of the parties to this case submit the appropriate application in compliance with the applicable appellate rules that explains how our decision in this case may be in conflict with this court's prior decision in *Fillinger*. As part of such application, we specifically note the requirement contained in App.R. 26(A)(2)(b) that mandates any application for en banc consideration "explain how the panel's decision conflicts with a prior panel's decision on a dispositive issue and why consideration by the court en banc is necessary to secure and maintain uniformity of the court's decisions."

**Conclusion**

{¶ 19} In light of the foregoing, the trial court's decision granting Hurst 17 days of jail-time credit for the time she spent on EMHA in accordance with this court's prior decision in *Fillinger* is reversed and remanded for further proceedings. The parties are further instructed, if either so desire, to file an application for en banc consideration in accordance with the applicable appellate rules, most notably App.R. 26(A)(2).

{¶ 20} Judgment reversed and remanded.

HENDRICKSON, P.J., concurs.

RINGLAND, J., dissents.

**RINGLAND, J. dissenting.**

{¶ 21} I respectfully dissent for the reasons stated in *State v. Fillinger*, 12th Dist. Madison No. CA2016-04-015, 2016-Ohio-8455. Therefore, I would affirm the decision of the trial court.