RINGLAND and M. POWELL, JJ., dissenting.
{¶ 17} We respectfully dissent from the majority's opinion that house arrest is not "confinement" for purposes of R.C. 2967.191, overruling State v. Fillinger , 12th Dist. Madison, 2016-Ohio-8455, 72 N.E.3d 671, and adopting State v. Porter , 12th Dist. Warren, 2018-Ohio-3123, 106 N.E.3d 125 ( Porter I ), as the law in this district. In Fillinger , this court found that a person was entitled to confinement credit against a prison term under R.C. 2967.191, for prior time on house arrest that had been imposed as a sanction for the same felony conviction. Id. at ¶ 12. In so doing, this court relied on the statutory definition of "house arrest" in R.C. 2929.01(P).
{¶ 18} "House arrest" as "confinement" for which a prisoner is entitled to credit against a prison term, necessarily depends upon whether the words "confined" and "confinement," as used in R.C. 2967.191, have the same meaning as the word "confinement" as used in R.C. 2929.01(P).[4] Based upon long-recognized principles of statutory construction and principles of judicial deference to legislative enactments, we believe that those words must be construed as having the same meaning in both statutes.
{¶ 19} Pursuant to R.C. 2929.01(P), "[h]ouse arrest means a period of confinement of an offender that is in the offender's home or in other premises specified by the sentencing court or by the parole board pursuant to section 2967.28 of the Revised Code" and during which all of the following apply:
(1) The offender is required to remain in the offender's home or other specified premises for the specified period of confinement, except for periods of time during which the offender is at the offender's place of employment or at other premises as authorized by the sentencing court or by the parole board.
(2) The offender is required to report periodically to a person designated by the court or parole board.
(3) The offender is subject to any other restrictions and requirements that may *967 be imposed by the sentencing court or by the parole board.
(Emphasis added.)
{¶ 20} R.C. 2967.191 provides in pertinent part that:
The department of rehabilitation and correction shall reduce the stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term, as determined by the sentencing court under division (B)(2)(g)(i) of section 2929.19 of the Revised Code, and confinement in a juvenile facility.
(Emphasis added.)
{¶ 21} Considering whether "confinement" as used in each of the statutes has the same meaning, requires that we ascertain and give effect to the Legislature's intent in enacting the statutes. State v. Lowe , 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. Courts must first resort to the plain language of the statute to determine the legislative intent. State v. Waggoner , 12th Dist. Butler No. CA2013-02-027, 2013-Ohio-5204, 2013 WL 6198315, ¶ 9. A statute should be applied as it is written when its meaning is unambiguous and definite. Lowe at ¶ 9. "An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language." Antoon v. Cleveland Clinic Found. , 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 20. The words used in a statute may not be ignored or treated as superfluous. State v. Polus , 145 Ohio St.3d 266, 2016-Ohio-655, 48 N.E.3d 553, ¶ 12 ("[n]o part [of a statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative").
{¶ 22} Additionally, in applying the usual rules of statutory construction, we should be mindful that there is a special rule of construction for statutes defining criminal penalties. R.C. 2901.04(A), sometimes referred to as the rule of lenity, provides that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." This statute applies because R.C. 2901.01(P) defines the penalty of "house arrest." Thus, the rule of lenity provides the backdrop against which the use of the word "confinement" in R.C. 2967.191 and 2929.01(P) should be interpreted.
{¶ 23} Reading R.C. 2967.191 and 2929.01 together indicates that the word "confinement" is used similarly in each of the statutes. That the word "confinement" is used in both statutes to refer to felony sanctions, in and of itself, strongly suggests that the statutes concern the same subject matter. Furthermore, an understanding of R.C. 2967.191 requires that it be interpreted with reference to the definitions in R.C. 2901.01. For instance, R.C. 2967.191 provides that confinement credit reduces a prisoner's "stated prison term." But the phrase "stated prison term" is not defined in R.C. Chapter 2967. However, "stated prison term" is defined by R.C. 2929.01, the same statute that defines "house arrest" as "confinement." Finally, in requiring that confinement credit be given in four specific instances of confinement, R.C. 2967.191 uses language nearly identical to that used in R.C. 2929.01(P) in *968 defining "house arrest" as "confinement." Thus, considering the use of the word "confinement" in both statutes, the similarity of language used in each statute in describing particular instances of "confinement," and the interdependence of the statutes, and construing the statutes strictly against the state and liberally in favor of the prisoner, the statutes should be construed as entitling a prisoner to credit for confinement on house arrest.
{¶ 24} As mentioned above, R.C. 2967.191 includes four specific instances for which the statute requires that a prisoner receive credit against a prison term (i.e., confinement in lieu of bail, for examination to determine competence or sanity, while awaiting transport, or in a juvenile facility). Apparently referring to the absence of house arrest from those specific instances of confinement, the majority notes that R.C. 2967.191"does not clearly provide" confinement credit for house arrest. However, the statute is clear that its mention of specific instances of confinement is not exclusive. The statute provides that the confinement credit it requires "includes" those particular instances of confinement. Accordingly, the inclusion of specific instances of confinement does not circumscribe the primary mandate of the statute that credit is due for prior "confinement." Thus, in applying R.C. 2967.191, it is necessary to determine not only whether the prisoner was subject to one of the statute's enumerated instances of "confinement," but also whether the prisoner was otherwise previously "confined" for the offense. Moreover, by defining "house arrest" as "confinement," R.C. 2929.01(P) has the practical effect of treating "house arrest" as a particular instance of "confinement" for which credit is due against a prison term, to the same extent as those listed in R.C. 2967.191. Pursuant to R.C. 2967.191 and 2929.01(P), a prisoner is entitled to credit for periods of house arrest that was imposed as a conviction for a felony.
{¶ 25} Today the majority adopts Porter I as the law of our appellate district. However, a review of Porter I discloses that it is based upon dubious authority. In holding that R.C. 2967.191 does not entitle a prisoner to credit for confinement on house arrest, Porter I relied upon the Ohio Supreme Court's opinions in State v. Nagle , 23 Ohio St.3d 185, 492 N.E.2d 158 (1986) ; and State v. Napier, 93 Ohio St.3d 646, 758 N.E.2d 1127 (2001) ; the Tenth Appellate District's opinion in State v. Blankenship , 192 Ohio App.3d 639, 2011-Ohio-1601, 949 N.E.2d 1087 (10th Dist.) ; and the Fifth Appellate District's opinion State v. Tabor , 5th Dist. Richland No. 11CA33, 2011-Ohio-3200, 2011 WL 2557024. A review of those cases does not support adoption of Porter I as the law.[5]
{¶ 26} Nagle and Napier resolved the issue of whether a particular sanction was "confinement" for which a prisoner was entitled to credit by considering the nature and extent of the restraint upon the prisoner's liberty imposed by the sanction. However, neither of these cases involved house arrest or another sanction which is defined by statute as "confinement." Neither of these cases construed *969 R.C. 2929.01(P). "Confinement" is not otherwise defined by the Ohio Revised Code. Thus, because Nagle and Napier were considering sanctions which the General Assembly had not defined as "confinement," resolution necessarily required an inquiry into the nature of the sanction to determine whether it should be considered "confinement." However, such an inquiry is unnecessary for house arrest because it is statutorily defined as "confinement." Thus, the Nagle / Napier precedent is distinguishable and inapplicable.
{¶ 27} Blankenship and Tabor each involve a denial of confinement credit for house arrest. Blankenship and Tabor, as well as the dissent in Fillinger , cite State v. Dickinson , 28 Ohio St.2d 65, 275 N.E.2d 599 (1971), to discount the unambiguous language of R.C. 2929.01(P) that house arrest is "confinement." Dickinson is cited for the proposition that "where two statutes do not expressly state that the word has the same meaning in both, it is apparent that it might have different meanings." Dickinson at 70, 275 N.E.2d 599. However, when the Dickinson citation is considered in context, it is clear that Dickinson does not support the proposition advanced by Blankenship , Tabor , and the Fillinger dissent. The entire Dickinson quote is as follows:
It must be noted, however, that the definition of a word in a civil statute does not necessarily import the same meaning to the same word in interpreting a criminal statute. The result may be desirable, but criminal statutes, unlike civil statutes, must be construed strictly against the state. Thus, where two statutes do not expressly state that the word has the same meaning in both, it is apparent that it might have different meanings.
Dickinson at 70, 275 N.E.2d 599.
{¶ 28} In Dickinson , the supreme court was commenting upon whether a word in a civil statute, which is not subject to strict construction against the state, would necessarily have the same meaning when also used in a criminal statute, which is strictly construed against the state. In this case, we are not dealing with a civil statute and a criminal statute but with two criminal statutes. Blankenship , Tabor , and the Fillinger dissent misconstrue Dickinson to rationalize a different meaning of "confinement" as used in R.C. 2967.191, from its use in R.C. 2929.01(P). Blankenship and Tabor are not persuasive authority which we should follow.
{¶ 29} We agree with the majority's philosophical aversion to treating house arrest as "confinement" for which credit is due under R.C. 2967.191. We understand the majority's reluctance to equate "house arrest" and "confinement" and to avoid the mental imagery that it conjures of leisurely enjoying the pleasures of living at home as punishment for conviction of a crime. The majority has advanced many legitimate arguments why a prisoner should not receive credit against a sentence of imprisonment for time on house arrest. But the judiciary's judgment is no more discerning than the Legislature's. Thus, we presume the General Assembly weighed those same arguments against other contrary considerations when enacting R.C. 2929.01(P) and defining house arrest as "confinement." As judges, we must accept the limitations upon our constitutional authority and exercise judicial restraint:
Judges are men and women just like everyone else in society. We are not infallible, but we do have a job to do. But in performing our duties, we should do so fairly and impartially, setting aside our own personal opinions and feelings, and render decisions in accordance with the law as adopted by the General Assembly and not attempt to impose our *970 own personal views of what the law should be, in order to remake and control society in our own personal concept of what society should be.
Cox v. Franklin Cty. Court of Common Pleas , 42 Ohio App.3d 171, 176, 537 N.E.2d 721 (10th Dist. 1988). See also Moore v. Dague , 46 Ohio App.2d 75, 85, 345 N.E.2d 449 (10th Dist. 1975) ("Courts are not super-legislatures, whose function it is to enact those laws which it feels the legislative bodies have unwisely failed to enact"); State ex rel. Ebersole v. Hurst , 111 Ohio App. 76, 77-78, 165 N.E.2d 235 (1st Dist. 1960) ("[I]t is not for the courts to change the statutes to conform to what the courts consider a better rule. This would be judicial legislation").
{¶ 30} The doctrine of separation of powers and related principles of judicial deference demand that we defer to the General Assembly's judgment in enacting legislation. In this regard, absent the statutory definition of house arrest as "confinement," we would also agree with the majority's reasoning that house arrest is not "confinement" pursuant to the Nagle / Napier analysis. However, the General Assembly has spoken on the matter and we must adhere to "[t]he cardinal principle of upholding legislative enactments, unless clearly in excess of the power conferred upon the legislature by the constitution, [having] its source in the division of the powers of government into three branches and the deference to be properly shown by each of those branches to the others." State ex rel. Durbin v. Smith , 102 Ohio St. 591, 607, 133 N.E. 457 (1921). "Such deference is due from this court to the legislative branch, and this court would be exceeding its constitutional power if it lightly nullified an act of the legislative branch." Id. Until and unless the legislature amends the language of R.C. 2929.01(P), we have no choice but to apply the statute as written. Thus, we must defer to the General Assembly's judgment that house arrest is "confinement."
{¶ 31} With regard and respect for our colleagues in the majority, we dissent from their holding that house arrest is not "confinement" for which an offender is entitled to credit for purposes of R.C. 2967.191.

"Confined" and "confinement," as used in R.C. 2967.191, are merely different usages of the same word (i.e., an adjective and a noun, respectively) conveying the same essential concept. Therefore, when we refer to the word "confinement," we are also referring to "confined," and vice versa.

The majority characterizes our criticism of Nagel , Napier , Blankenship , and Tabor as authority supporting their position as "unfounded and perplexing" because those cases were relied upon in Porter I only in its analysis of whether curfew, as opposed to house arrest, is "confinement" for purposes of R.C. 2967.191. However, in holding that house arrest is not "confinement" in Porter I the majority stated that, "[w]e agree with the reasoning articulated in Judge Hendrickson's dissent" in Fillinger. Judge Hendrickson's dissent in Fillinger relied upon Nagel , Napier , Blankenship , and Tabor . By extension, so does the majority in this case.