[Cite as *State v. Porter*, 2018-Ohio-3123.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO,                                  :

    Plaintiff-Appellee/Cross-          :            CASE NOS. CA2017-07-101
    Appellant,                                                          CA2017-07-103
                                               :
- vs -                                              :            O P I N I O N
                                               :            8/6/2018
DESHAWN PORTER,
                                               :
    Defendant-Appellant/Cross-
    Appellee.                                  :

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CR30506

David P. Fornshell, Warren County Prosecuting Attorney, Kristen A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee/cross-appellant

Diehl & Hubbell, LLC, Martin E. Hubbell, 304 East Warren Street, Lebanon, Ohio 45036, for appellant/cross-appellee

**PIPER, J.**

{¶ 1}   Defendant-appellant/cross-appellee, DeShawn Porter, appeals the manner in which the Warren County Court of Common Pleas determined his jail-time credit after sentencing Porter to two years in prison.  Plaintiff-appellee/cross-appellant, the state of Ohio, appeals the same trial court's decision awarding jail-time credit for days that Porter spent on house arrest.

{¶ 2}   Porter pled guilty to one count of burglary and was sentenced to two years in

prison. Porter was incarcerated for several months before he was granted judicial release and placed on three years of community control. Thereafter, Porter violated the terms of his community control by absconding and absenting himself from the jurisdiction without the trial court's permission. Porter also tested positive for drug use. The trial court then imposed more restrictive community control sanctions, which included electronically-monitored house arrest and a curfew.

{¶ 3} Porter violated the terms of his community control again when he tested positive for cocaine. The trial court revoked Porter's community control and imposed the original two-year prison term. The trial court awarded jail-time credit, which included the time that Porter spent on house arrest but did not include the amount of time Porter was subject to a curfew.

{¶ 4} Porter now appeals the trial court's calculation of jail-time credit, raising one assignment of error:

{¶ 5} THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE APPELLANT JAIL-TIME CREDIT FOR TIME SPENT ON HOUSE ARREST, WITH A CURFEW.

{¶ 6} The state also appeals the trial court's sentence, raising the following cross-assignment of error:

{¶ 7} THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED PORTER 96 DAYS OF JAIL-TIME CREDIT FOR THE TIME HE SPENT ON ELECTRONICALLY-MONITORED HOUSE ARREST.

{¶ 8} Given that the two assignments of error are interrelated, we will address them together.

{¶ 9} As previously stated, the trial court revoked Porter's community control after Porter's second violation. In determining jail-time credit toward the two-year sentence, the trial court gave Porter credit for the time he was under house arrest, but did not award time

- 2 -

for which Porter was subject to a curfew.

{¶ 10} This court has addressed these issues in previous decisions of which all parties and the trial court are aware. This court has specifically determined that defendants are not confined for the purposes of granting jail-time credit when subject to curfew restrictions. *State v. Bowling*, 12th Dist. Warren Nos. CA2017-02-020, CA2017-02-021, and CA2017-03-032, 2017-Ohio-8539. Although Porter asks us to depart from the precedent set forth in *Bowling*, we decline to do so and, instead, reiterate the legal analysis set forth therein.

{¶ 11} Ohio statutes specifically instruct sentencing courts to reduce a prison term by the total number of days that the defendant was "confined." R.C. 2967.191; R.C. 2949.08(B). However, the statues do not define or offer guidance on how the term "confined" should be used by Ohio courts. Nevertheless, we noted in *Bowling* that curfew is not defined as a period of "confinement" under the terms of the Ohio Revised Code. Instead, and pursuant to R.C. 2929.01(G), the term curfew "means a requirement that an offender during a specified period of time be at a designated place."

{¶ 12} We also addressed the Ohio Supreme Court's decisions related to the issue of jail-time credit in *State v. Nagle*, 23 Ohio St.3d 185 (1986); and *State v. Napier*, 93 Ohio St.3d 646 (2001). In *Nagle*, the defendant was ordered to attend a residential rehabilitation facility pursuant to the terms of his conditional probation. However, the defendant left the treatment before it was completed and was subsequently resentenced by the trial court. The court held that the defendant was not entitled to jail-time credit for time spent in the rehabilitation facility because "in none of [the examples of confinement under R.C. 2949.08(C)] may the defendant leave official custody of his own volition." 23 Ohio St.3d at 186.

{¶ 13} In *Napier*, the court found that the defendant was entitled to jail-time credit for

time spent at a community based correctional facility because the time spent there was confinement. Napier was only able to leave the facility after submitting a detailed written description of when he was leaving the facility, where he was going, and when he planned to return. The court reasoned that Napier was not free to come and go and was thus "subject to the control of the staff regarding personal liberties." 93 Ohio St.3d at 648.

{¶ 14} Courts interpreting *Nagle* and *Napier* have concluded that "'confinement' requires such a restraint on the defendant's freedom of movement that he cannot leave official custody of his own volition." *State v. Blankenship*, 192 Ohio App.3d 639, 2011-Ohio-1601, ¶ 14 (10th Dist.). In *State v. Tabor*, 5th Dist. Richland No. 11CA33, 2011-Ohio-3200, the Fifth District Court of Appeals held that an individual was not entitled to jail-time credit where the offender was placed on community control and subject to electronic monitoring and curfew. Tabor was subject to a curfew requirement that restricted him to his home between the hours of 10:00 p.m. and 6:00 a.m. Otherwise, the defendant "was free to move around within the county and could leave the county with permission as long as he abided by the terms of his community control." *Id.* at ¶ 18.

{¶ 15} The record indicates that Porter was subject to a curfew that required him to be home from 8:00 p.m. to 8:00 a.m., Monday through Sunday. Aside from those times, evidence submitted at the revocation hearing indicated that Porter had freedom of movement and was not in custody or restrained from movement. Instead, Porter was "able to do what he want[ed]," which included ingesting cocaine. Porter was also free to "do or go wherever" he wanted, other than leaving the state without permission. Porter was permitted to work, "come and go from [his] residence," attend parties or go to church. Further, Porter was able to go to the store, decide when and where to eat, was free to play video games, and watch movies or television. Porter was also permitted to have visitors, and his movement in his home was not restrained or restricted in any way. As a result, we find that Porter was not

- 4 -

"confined" for purposes of calculating jail-time credit for the time spent on curfew. Therefore, the trial court did not err by calculating Porter's jail-time credit without including the days Porter was subject to a curfew. Consequently, Porter's assignment of error is overruled.

{¶ 16} While a majority of the panel in *State v. Fillinger*, 12th Dist. Madison No. CA2016-04-015, 2016-Ohio-8455, determined that being subject to house arrest qualifies as being confined for purposes of jail-time credit, we now depart from the reasoning set forth in that case.

{¶ 17} In *Fillinger*, the majority relied on the definition of house arrest set forth in Ohio's sentencing scheme. Specifically, R.C. 2929.01(P) defines house arrest as "a period of confinement of an offender that is in the offender's home or in other premises specified by the sentencing court * * *." Based solely on the definition provided in the statute, the majority held that a defendant subject to house arrest qualifies for jail-time credit for the days he or she spends on house arrest.

{¶ 18} In a well-reasoned dissent, Judge Robert A. Hendrickson determined that the statutory definition of house arrest should not be dispositive when deciding if one is subject to jail-time credit while on house arrest. Rather, Judge Hendrickson's dissent focused on the different ways the word "confinement" has been treated by the legislature, and that a sentencing court's final determination should be based on "circumstances surrounding the restraint of the defendant's physical movements without regard to whether the defendant's movements may constitute a violation of probation or community control." 2016-Ohio-8455 at ¶ 23. The circumstances by which conditions are imposed upon an individual identify the extent to which a person was subject to the control of others and liberties restrained. *See Napier* at 648.

{¶ 19} We agree with the reasoning articulated in Judge Hendrickson's dissent. Porter's accountability to a designated location (his home) was not tantamount to

confinement associated with the loss of liberties and restraint of choices found in jail confinement. While on house arrest, Porter was not subject to the control of officials regarding his personal decisions and self-determination. We therefore hold that an individual subjected to house arrest may not be awarded jail-time credit for the time spent on house arrest. This is because an individual's liberties, freedom of choices, and movement are not restrained to an extent commonly associated with being "confined." Porter had significant and substantial freedom from restraint while on house arrest. Thus, jail-time credit was improperly given to Porter for the time he was on house arrest. We therefore overrule this court's prior decision in *Fillinger* to the extent that it permits jail-time credit for those on house arrest.

{¶ 20} The record herein is undisputed that Porter's freedom of movement was not restrained while he was subject to house arrest. During the final probation hearing, testimony revealed that Porter wore an electronic monitoring device that merely beeped when he moved away from the beacon, but such monitoring did not stop him from leaving his home. During the time that Porter was under house arrest, he even moved residences from staying with a friend to moving into a long-term motel with his girlfriend.

{¶ 21} In fact, nothing about Porter's house arrest was consistent with traditional confinement. Porter's personal liberties were not curtailed, as he was not physically restrained, and instead, was merely monitored from afar by the probation department or court services. Porter was not locked in his home or subject to shackles or restraints. Porter controlled his own schedule, including moving freely around his home, planning meals, welcoming guests, and doing whatever he wanted while in the house.

{¶ 22} Moreover, Porter could have left his home at any time, as it was not locked or protected by probation or court services in any manner. Simply by choice, Porter could have left his home to go anywhere and do anything because he was never physically restrained or

stopped from walking out his front door. Porter was granted the comfort and convenience of residing at home. Such is not equivalent to being subject to the moment-to-moment control of staff regarding personal liberties. The individual autonomy one experiences when required to be at a certain location, like house arrest, with all of its other freedom and choices, cannot remotely be compared to the substantial restrictions imposed by the confinement found in a government-operated facility.

{¶ 23} While Porter may have faced consequences for his choice to leave his house, such consequences for disobeying a court order were no more akin to confinement than his original decision to violate the terms of his community control. Simply stated, Porter was able to continue his life, make decisions on when and what he was going to do in his home, and was even able to move residences to reside with his girlfriend. Thus, Porter was not confined during the time he was subject to house arrest, and the trial court erred by granting Porter 96 days of jail-time credit. The state's cross-assignment of error is sustained. On remand, the trial court shall recalculate Porter's jail time credit and shall not give credit for the days Porter was subject to house arrest.

{¶ 24} Judgment affirmed in part, reversed in part, and the matter is remanded to the trial court for the sole purpose of recalculating Porter's jail-time credit.

S. POWELL, P.J., concurs.

RINGLAND, J., concurs in part and dissents in part.

**RINGLAND, J., concurring in part and dissenting in part.**

{¶ 25} I respectfully dissent for the reasons stated in *State v. Fillinger*, 12th Dist. Madison No. CA2016-04-015, 2016-Ohio-8455. In *Fillinger*, this court found that "house arrest" satisfied the definition of "confined" for purposes of determining jail-time credit. *Id.* at

¶ 12. In so doing, this court relied on the statutory definition of "house arrest," which is defined as "a period of confinement." R.C. 2929.01(P). As a result, "house arrest," when "imposed as a community control sanction pursuant to R.C. 2929.17 for conviction of a felony, it is 'confinement.'" *Id.*

{¶ 26} However, I concur in part because curfew is not defined as a period of "confinement" under the terms of the Ohio Revised Code. Pursuant to R.C. 2929.01(G), the term curfew "means a requirement that an offender during a specified period of time be at a designated place." *State v. Bowling*, 12th Dist. Warren Nos. CA2017-02-020, CA2017-02-021, and CA2017-03-032, 2017-Ohio-8539, ¶ 17. Therefore, I would affirm the decision of the trial court to the extent it denied Porter credit for the time he was subject to a curfew.