[Cite as *State v. Porter*, 2018-Ohio-3852.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2017-07-101 |
| | | CA2017-07-103 |
| | : | |
| - vs - | | EN BANC OPINION |
| | : | 9/24/2018 |
| DESHAWN PORTER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CR30506

David P. Fornshell, Warren County Prosecuting Attorney, Kristen A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Diehl & Hubbell, LLC, Martin E. Hubbell, 304 East Warren Street, Lebanon, Ohio 45036, for appellant

**EN BANC.**

{¶ 1} Pursuant to App.R. 26(A)(2) and Loc.R. 18(D), this court sua sponte determined that a conflict existed regarding our review of jail-time credit involving house arrest as discussed in *State v. Fillinger*, 12th Dist. CA2015-04-015, 2016-Ohio-8455, and *State v. Porter*, 12th Dist. Warren Nos. CA2017-07-101 and CA2017-07-103, 2018-Ohio-3123. Therefore, this court considered the matter en banc.

{¶ 2} After holding an en banc conference pursuant to Loc.R. 18(D), a majority of the judges of this court have determined that a defendant is not entitled to jail-time credit for the time he or she is subject to house arrest. As such, the law of this district is now settled, and sentencing courts in the Twelfth District shall analyze the matter as set forth in *State v. Porter*.

{¶ 3} In *Porter*, the state appealed the manner in which the Warren County Court of Common Pleas determined Porter's jail-time credit after sentencing him to two years in prison. Porter pled guilty to one count of burglary and was sentenced to two years in prison. Porter was incarcerated for several months before he was granted judicial release and placed on three years of community control. Thereafter, Porter violated the terms of his community control by absconding and absenting himself from the jurisdiction without the trial court's permission. Porter also tested positive for drug use. The trial court then imposed more restrictive community control sanctions, which included electronically-monitored house arrest and a curfew.

{¶ 4} Porter violated the terms of his community control again when he tested positive for cocaine. The trial court revoked Porter's community control and imposed the two-year prison term originally announced. The trial court awarded jail-time credit, which included the time that Porter spent on house arrest but did not include the amount of time Porter was subject to a curfew.[1]

{¶ 5} On appeal, the state argued that the trial court improperly calculated jail-time credit. In determining jail-time credit toward the two-year sentence, the trial court gave Porter credit for the time he was under house arrest pursuant to *State v. Fillinger*, 12th Dist.

---

1. This court has unanimously determined that no jail-time credit may be awarded for time subject to curfew. *State v. Bowling*, 12th Dist. Warren Nos. CA2017-02-020, CA2017-02-21, and CA2017-03-032, 2017-Ohio-8539. As such, Porter's original appeal specific to his being denied jail-time credit while subject to curfew is not a matter subject to this en banc consideration and will not be addressed in this opinion.

Madison No. CA2016-04-015, 2016-Ohio-8455. Therein, the majority relied on the definition of house arrest set forth in Ohio's sentencing scheme. Specifically, R.C. 2929.01(P) defines house arrest as "a period of confinement of an offender that is in the offender's home or in other premises specified by the sentencing court * * *." Based solely on the definition of "confinement" in an unrelated statute, R.C. 2929.01(P), the majority held that a defendant subject to house arrest qualifies for jail-time credit for purposes of being "confined" pursuant to R.C. 2967.191.

{¶ 6} In a well-reasoned dissent, Judge Robert A. Hendrickson determined that the statutory definition of house arrest should not be dispositive when deciding if one is subject to jail-time credit while on house arrest. Rather, Judge Hendrickson's dissent focused on the different ways the word "confinement" has been treated by the legislature, and that a sentencing court's final determination should be based on "circumstances surrounding the restraint of the defendant's physical movements without regard to whether the defendant's movements may constitute a violate of probation or community control." *Fillinger*, 2016-Ohio-8455 at ¶ 23. The circumstances by which conditions are imposed upon an individual identify the extent to which a person was subject to the control of others and liberties restrained. *See State v. Napier*, 93 Ohio St.3d 646 (2001).[2]

{¶ 7} Having considered the matter en banc, we find that Porter's accountability to a designated location (his home) is not tantamount to confinement associated with the loss of liberties and the restraint of choices the same as, or similar to, being confined in jail. While

---

2. The dissent suggests that *Porter I* relied upon "dubious" authority when citing *Nagle*, *Napier*, *Blankenship*, and *Tabor*. However, even a cursory review of *Porter I* demonstrates that those cases were discussed when addressing the issue of *curfew*, not house arrest. While *Porter I* and the majority herein discuss the general rule from *Napier* that circumstances control a determination of confinement, such general rule did not form the basis of the analysis for *Porter I* or our current majority. As stated in the previous footnote, this court, including the dissenting members, has been unanimous on the issue of curfew and that no jail-time credit may be awarded to those subject to a curfew, and the curfew issue was not before this court en banc. As such, the dissent's disdain for cases cited in *Porter I* on an issue that is not before us is both unfounded and perplexing.

on house arrest, Porter was not subject to the direct control of officials of a government facility regarding his personal decisions and self-determination. We therefore hold that an individual subjected to house arrest may not be awarded jail-time credit for the time spent while exercising the freedoms of house arrest. This is because an individual's liberties, freedom of choices, and movement are not restrained to an extent reasonably associated with being "confined" in a facility.

{¶ 8} Being "confined" for purposes of jail-time credit as found in R.C. 2967.191 does not allow for employment at will and living at other premises as does house arrest "confinement" found in R.C. 2929.01(P). A plain reading of the statutes should not be "construed" as the dissent does, as having the same meaning. The dissent reaches its interpretation via its judicial determination of legislative intent. We remain unpersuaded to follow such a path.

{¶ 9} Porter had significant and substantial freedom from restraint while on house arrest. Thus, jail-time credit was improperly given to Porter for the time he was on house arrest. As previously stated in *Porter*, and now upheld after en banc consideration, this court overrules our prior decision in *State v. Fillinger* to the extent that it permits jail-time credit for those on house arrest.

{¶ 10} The record herein is undisputed that Porter's freedom was minimally restrained while he was subject to house arrest. Throughout the final probation hearing, testimony revealed that Porter wore an electronic monitoring device that merely beeped when he moved away from the beacon, but such monitoring did not stop him from leaving his home. During the time that Porter was under house arrest, he even moved residences from staying with a friend to moving into a long-term motel with his girlfriend.

{¶ 11} In fact, nothing about Porter's house arrest was consistent with traditional confinement. Porter's personal liberties were not curtailed, as he was not physically

restrained, and instead, was merely monitored from afar by the probation department or court services. Porter was not locked in his home or subject to shackles or restraints. Porter controlled his own schedule, including moving freely about, choosing his roommates, planning meals, welcoming guests, and doing whatever he wanted, whenever he wanted. In fact, Porter violated his community control while living on house arrest for using cocaine.[3]

{¶ 12} Porter could have left his home at any time, as it was not locked or protected by probation or court services in any manner. Simply by choice, Porter could go anywhere, and do anything, because he was never "confined." Porter was granted the comfort and convenience of residing at home and later at a motel with his girlfriend. Such is not equivalent to being subject to moment-to-moment control by officials regarding personal liberties. The individual autonomy one experiences when required to be at a certain location, like house arrest, with all of its freedom and other choices, cannot remotely be compared to the substantial restrictions imposed by the confinement found in a government-operated facility.

{¶ 13} We note the dissent attempts to obtain the same result it reached in *Fillinger*. Yet, the law is not devoid of common sense, nor is R.C. 2967.191 to be denied its plain reading. Being "confined" within the statute does not include house arrest confinement. The dissent employs statutory construction suggesting a plain reading of the statute aids it in interpreting legislative intent. Yet, there is no need to employ statutory construction or look to "intent" if the words of the statute are plain and unequivocal. It is incongruous to search for legislative intent using statutory construction if a plain reading of the statute can be applied.

---

3. The dissent cavalierly dismisses the differences in the types of confinement as being "mental imagery," yet, the two statutes function separately and without reference to one another due to the significant differences of the various types of confinement. While R.C. 2967.191 gives examples of custodial confinement, house arrest "confinement," to the extent it exists, clearly entails much greater freedom in self-governance. House arrest is a given opportunity with a very limited inconvenience, which one undertakes in order to avoid the much greater intrusion of a lock-down facility.

As the dissent itself reveals in its recitation of interwoven case law and statutes, it cannot avoid the remaining fact that R.C. 2967.191 does not expressly provide that an offender is entitled to jail-time credit for house arrest, particularly as defined under another statute.

{¶ 14} We note that none of the examples of being "confined" for which one is entitled to jail-time credit include circumstances that equate to the "confinement" as defined in the house arrest statute. The dissent suggests that the two different statutes carry the same meaning via a gymnastic exercise of statutory construction, and ironically "construes" its interpretation under the guise of "judicial restraint" and legislative deference. The dissent's vainglorious pronouncement that it alone applies R.C. 2967.191 "as written," rings hollow.

{¶ 15} While Porter may have faced consequences for his choice to leave his house, such consequences for disobeying a court order were no more akin to confinement than his original decision to violate the terms of his community control. Simply stated, Porter was able to conduct his life however he chose, make decisions regarding when and what he was going to do, and was even able to choose where and with whom he lived. Thus, Porter was not confined during the time he was subject to house arrest for the purposes of R.C. 2967.191, and the trial court erred by granting Porter 96 days of jail-time credit.

{¶ 16} To secure and maintain uniformity of the court's decisions, the court hereby confirms and adopts the holding in *State v. Porter*, 12th Dist. Warren Nos. CA2017-07-101 and CA2017-07-103, 2018-Ohio-3123, as the en banc decision of the court on the issue of whether time served under house arrest constitutes confinement for purposes of determining jail-time credit. We further overrule *State v. Fillinger*, 12th Dist. Madison No. CA2016-04-015, 2016-Ohio-8455, to the extent it permits jail-time credit for time served under house arrest.

S. POWELL, P.J., HENDRICKSON and PIPER, JJ., concur.

RINGLAND and M. POWELL, JJ., dissent.

**RINGLAND and M. POWELL, JJ., dissenting.**

{¶ 17} We respectfully dissent from the majority's opinion that house arrest is not "confinement" for purposes of R.C. 2967.191, overruling *State v. Fillinger*, 12th Dist. Madison No. CA2016-04-015, 2016-Ohio-8455, and adopting *State v. Porter*, 12th Dist. Warren Nos. CA2017-07-101 and CA2017-07-103, 2018-Ohio-3123 (*Porter I*), as the law in this district. In *Fillinger*, this court found that a person was entitled to confinement credit against a prison term under R.C. 2967.191, for prior time on house arrest that had been imposed as a sanction for the same felony conviction. *Id.* at ¶ 12. In so doing, this court relied on the statutory definition of "house arrest" in R.C. 2929.01(P).

{¶ 18} "House arrest" as "confinement" for which a prisoner is entitled to credit against a prison term, necessarily depends upon whether the words "confined" and "confinement," as used in R.C. 2967.191, have the same meaning as the word "confinement" as used in R.C. 2929.01(P).[4] Based upon long-recognized principles of statutory construction and principles of judicial deference to legislative enactments, we believe that those words must be construed as having the same meaning in both statutes.

{¶ 19} Pursuant to R.C. 2929.01(P), "[h]ouse arrest means a period of *confinement* of an offender that is in the offender's home or in other premises specified by the sentencing court or by the parole board pursuant to section 2967.28 of the Revised Code" and during which all of the following apply:

(1) The offender is required to remain in the offender's home or

---

4. "Confined" and "confinement," as used in R.C. 2967.191, are merely different usages of the same word (i.e., an adjective and a noun, respectively) conveying the same essential concept. Therefore, when we refer to the word "confinement," we are also referring to "confined," and vice versa.

other specified premises for the specified period of confinement, except for periods of time during which the offender is at the offender's place of employment or at other premises as authorized by the sentencing court or by the parole board.

(2) The offender is required to report periodically to a person designated by the court or parole board.

(3) The offender is subject to any other restrictions and requirements that may be imposed by the sentencing court or by the parole board.

(Emphasis added.)

{¶ 20} R.C. 2967.191 provides in pertinent part that:

The department of rehabilitation and correction shall reduce the stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by the total number of days that the prisoner was *confined* for any reason arising out of the offense for which the prisoner was convicted and sentenced, including *confinement* in lieu of bail while awaiting trial, *confinement* for examination to determine the prisoner's competence to stand trial or sanity, *confinement* while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term, as determined by the sentencing court under division (B)(2)(g)(i) of section 2929.19 of the Revised Code, and *confinement* in a juvenile facility.

(Emphasis added.)

{¶ 21} Considering whether "confinement" as used in each of the statutes has the same meaning, requires that we ascertain and give effect to the Legislature's intent in enacting the statutes. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 9. Courts must first resort to the plain language of the statute to determine the legislative intent. *State v. Waggoner*, 12th Dist. Butler No. CA2013-02-027, 2013-Ohio-5204, ¶ 9. A statute should be applied as it is written when its meaning is unambiguous and definite. *Lowe* at ¶ 9. "An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language." *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, ¶ 20. The words used in a statute may not be ignored or treated as superfluous. *State*

*v. Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, ¶ 12 ("[n]o part [of a statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative").

**{¶ 22}** Additionally, in applying the usual rules of statutory construction, we should be mindful that there is a special rule of construction for statutes defining criminal penalties. R.C. 2901.04(A), sometimes referred to as the rule of lenity, provides that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." This statute applies because R.C. 2901.01(P) defines the penalty of "house arrest." Thus, the rule of lenity provides the backdrop against which the use of the word "confinement" in R.C. 2967.191 and 2929.01(P) should be interpreted.

**{¶ 23}** Reading R.C. 2967.191 and 2929.01 together indicates that the word "confinement" is used similarly in each of the statutes. That the word "confinement" is used in both statutes to refer to felony sanctions, in and of itself, strongly suggests that the statutes concern the same subject matter. Furthermore, an understanding of R.C. 2967.191 requires that it be interpreted with reference to the definitions in R.C. 2901.01. For instance, R.C. 2967.191 provides that confinement credit reduces a prisoner's "stated prison term." But the phrase "stated prison term" is not defined in R.C. Chapter 2967. However, "stated prison term" is defined by R.C. 2929.01, the same statute that defines "house arrest" as "confinement." Finally, in requiring that confinement credit be given in four specific instances of confinement, R.C. 2967.191 uses language nearly identical to that used in R.C. 2929.01(P) in defining "house arrest" as "confinement." Thus, considering the use of the word "confinement" in both statutes, the similarity of language used in each statute in describing particular instances of "confinement," and the interdependence of the statutes, and construing the statutes strictly against the state and liberally in favor of the prisoner, the

statutes should be construed as entitling a prisoner to credit for confinement on house arrest.

{¶ 24}   As mentioned above, R.C. 2967.191 includes four specific instances for which the statute requires that a prisoner receive credit against a prison term (i.e., confinement in lieu of bail, for examination to determine competence or sanity, while awaiting transport, or in a juvenile facility).  Apparently referring to the absence of house arrest from those specific instances of confinement, the majority notes that R.C. 2967.191 "does not clearly provide" confinement credit for house arrest.  However, the statute is clear that its mention of specific instances of confinement is not exclusive.  The statute provides that the confinement credit it requires "includes" those particular instances of confinement.  Accordingly, the inclusion of specific instances of confinement does not circumscribe the primary mandate of the statute that credit is due for prior "confinement."  Thus, in applying R.C. 2967.191, it is necessary to determine not only whether the prisoner was subject to one of the statute's enumerated instances of "confinement," but also whether the prisoner was otherwise previously "confined" for the offense.  Moreover, by defining "house arrest" as "confinement," R.C. 2929.01(P) has the practical effect of treating "house arrest" as a particular instance of "confinement" for which credit is due against a prison term, to the same extent as those listed in R.C. 2967.191.  Pursuant to R.C. 2967.191 and 2929.01(P), a prisoner is entitled to credit for periods of house arrest that was imposed as a conviction for a felony.

{¶ 25}   Today the majority adopts *Porter I* as the law of our appellate district. However, a review of *Porter I* discloses that it is based upon dubious authority.  In holding that R.C. 2967.191 does not entitle a prisoner to credit for confinement on house arrest, *Porter I* relied upon the Ohio Supreme Court's opinions in *State v. Nagle*, 23 Ohio St.3d 185 (1986); and *State v. Napier,* 93 Ohio St.3d 646 (2001); the Tenth Appellate District's opinion in *State v. Blankenship*, 192 Ohio App.3d 639, 2011-Ohio-1601 (10th Dist.); and the Fifth Appellate District's opinion *State v. Tabor*, 5th Dist. Richland No. 11CA33, 2011-Ohio-3200.

A review of those cases does not support adoption of *Porter I* as the law.[5]

{¶ 26} *Nagle* and *Napier* resolved the issue of whether a particular sanction was "confinement" for which a prisoner was entitled to credit by considering the nature and extent of the restraint upon the prisoner's liberty imposed by the sanction. However, neither of these cases involved house arrest or another sanction which is defined by statute as "confinement." Neither of these cases construed R.C. 2929.01(P). "Confinement" is not otherwise defined by the Ohio Revised Code. Thus, because *Nagle* and *Napier* were considering sanctions which the General Assembly had not defined as "confinement," resolution necessarily required an inquiry into the nature of the sanction to determine whether it should be considered "confinement." However, such an inquiry is unnecessary for house arrest because it is statutorily defined as "confinement." Thus, the *Nagle*/*Napier* precedent is distinguishable and inapplicable.

{¶ 27} *Blankenship* and *Tabor* each involve a denial of confinement credit for house arrest. *Blankenship* and *Tabor,* as well as the dissent in *Fillinger*, cite *State v. Dickinson*, 28 Ohio St.2d 65 (1971), to discount the unambiguous language of R.C. 2929.01(P) that house arrest is "confinement." *Dickinson* is cited for the proposition that "where two statues do not expressly state that the word has the same meaning in both, it is apparent that it might have different meanings." *Dickinson* at 70. However, when the *Dickinson* citation is considered in context, it is clear that *Dickinson* does not support the proposition advanced by *Blankenship*, *Tabor*, and the *Fillinger* dissent. The entire *Dickinson* quote is as follows:

> It must be noted, however, that the definition of a word in a civil statute does not necessarily import the same meaning to the same word in interpreting a criminal statute. The result may be

---

5. The majority characterizes our criticism of *Nagel*, *Napier*, *Blankenship*, and *Tabor* as authority supporting their position as "unfounded and perplexing" because those cases were relied upon in *Porter I* only in its analysis of whether curfew, as opposed to house arrest, is "confinement" for purposes of R.C. 2967.191. However, in holding that house arrest is not "confinement" in *Porter I* the majority stated that, "[w]e agree with the reasoning articulated in Judge Hendrickson's dissent" in *Fillinger.* Judge Hendrickson's dissent in *Fillinger* relied upon *Nagel*, *Napier*, *Blankenship*, and *Tabor.* By extension, so does the majority in this case.

> desirable, but criminal statutes, unlike civil statutes, must be construed strictly against the state. Thus, where two statutes do not expressly state that the word has the same meaning in both, it is apparent that it might have different meanings.

*Dickinson* at 70.

{¶ 28} In *Dickinson*, the supreme court was commenting upon whether a word in a civil statute, which is not subject to strict construction against the state, would necessarily have the same meaning when also used in a criminal statute, which is strictly construed against the state. In this case, we are not dealing with a civil statute and a criminal statute but with two criminal statutes. *Blankenship*, *Tabor*, and the *Fillinger* dissent misconstrue *Dickinson* to rationalize a different meaning of "confinement" as used in R.C. 2967.191, from its use in R.C. 2929.01(P). *Blankenship* and *Tabor* are not persuasive authority which we should follow.

{¶ 29} We agree with the majority's philosophical aversion to treating house arrest as "confinement" for which credit is due under R.C. 2967.191. We understand the majority's reluctance to equate "house arrest" and "confinement" and to avoid the mental imagery that it conjures of leisurely enjoying the pleasures of living at home as punishment for conviction of a crime. The majority has advanced many legitimate arguments why a prisoner should not receive credit against a sentence of imprisonment for time on house arrest. But the judiciary's judgment is no more discerning than the Legislature's. Thus, we presume the General Assembly weighed those same arguments against other contrary considerations when enacting R.C. 2929.01(P) and defining house arrest as "confinement." As judges, we must accept the limitations upon our constitutional authority and exercise judicial restraint:

> Judges are men and women just like everyone else in society. We are not infallible, but we do have a job to do. But in performing our duties, we should do so fairly and impartially, setting aside our own personal opinions and feelings, and render decisions in accordance with the law as adopted by the General Assembly and not attempt to impose our own personal views of

what the law should be, in order to remake and control society in our own personal concept of what society should be.

*Cox v. Franklin Cty. Court of Common Pleas*, 42 Ohio App.3d 171, 176 (10th Dist.1988). *See also Moore v. Dague*, 46 Ohio App.2d 75, 85 (10th Dist.1975) ("Courts are not super-legislatures, whose function it is to enact those laws which it feels the legislative bodies have unwisely failed to enact"); *State ex rel. Ebersole v. Hurst*, 111 Ohio App. 76, 77-78 (1st Dist.1960) ("[I]t is not for the courts to change the statutes to conform to what the courts consider a   better rule. This would be judicial legislation").

{¶ 30} The doctrine of separation of powers and related principles of judicial deference demand that we defer to the General Assembly's judgment in enacting legislation. In this regard, absent the statutory definition of house arrest as "confinement," we would also agree with the majority's reasoning that house arrest is not "confinement" pursuant to the *Nagle/Napier* analysis.  However, the General Assembly has spoken on the matter and we must adhere to "[t]he cardinal principle of upholding legislative enactments, unless clearly in excess of the power conferred upon the legislature by the constitution, [having] its source in the division of the powers of government into three branches and the deference to be properly shown by each of those branches to the others." *State ex rel. Durbin v. Smith*, 102 Ohio St. 591, 607 (1921).  "Such deference is due from this court to the legislative branch, and this court would be exceeding its constitutional power if it lightly nullified an act of the legislative branch."  *Id.*  Until and unless the legislature amends the language of R.C. 2929.01(P), we have no choice but to apply the statute as written.  Thus, we must defer to the General Assembly's judgment that house arrest is "confinement."

{¶ 31}  With regard and respect for our colleagues in the majority, we dissent from their holding that house arrest is not "confinement" for which an offender is entitled to credit for purposes of R.C. 2967.191.