{¶ 1} Pursuant to App.R. 26(A)(2) and Loc.R. 18(D), this court sua sponte determined that a conflict existed regarding our review of jail-time credit involving house arrest as discussed in State v. Fillinger , 12th Dist., 2016-Ohio-8455, 72 N.E.3d 671, and State v. Porter , 12th Dist. Warren, 2018-Ohio-3123, 106 N.E.3d 125. Therefore, this court considered the matter en banc.
{¶ 2} After holding an en banc conference pursuant to Loc.R. 18(D), a majority of the judges of this court have determined that a defendant is not entitled to jail-time credit for the time he or she is subject to house arrest. As such, the law of this district is now settled, and sentencing courts in the Twelfth District shall analyze the matter as set forth in State v. Porter .
{¶ 3} In Porter , the state appealed the manner in which the Warren County Court of Common Pleas determined Porter's jail-time credit after sentencing him to two years in prison. Porter pled guilty to one count of burglary and was sentenced to two years in prison. Porter was incarcerated for several months before he was granted judicial release and placed on three years of community control. Thereafter, Porter violated the terms of his community control by absconding and absenting himself from the jurisdiction without the trial court's permission. Porter also tested positive for drug use. The trial court then imposed more restrictive community control sanctions, which included electronically-monitored house arrest and a curfew.
{¶ 4} Porter violated the terms of his community control again when he tested positive for cocaine. The trial court revoked Porter's community control and imposed the two-year prison term originally announced. The trial court awarded jail-time credit, which included the time that Porter spent on house arrest but did not include the amount of time Porter was subject to a curfew.[1]
{¶ 5} On appeal, the state argued that the trial court improperly calculated jail-time credit. In determining jail-time credit toward the two-year sentence, the trial court gave Porter credit for the time he was under house arrest pursuant to State v. Fillinger , 12th Dist. Madison, 2016-Ohio-8455, 72 N.E.3d 671. Therein, the majority relied on the definition of house arrest set forth in Ohio's sentencing scheme. Specifically, R.C. 2929.01(P) defines house arrest as "a period of confinement of an offender that is in the offender's home or in other premises specified by the sentencing court * * *." Based solely on the definition of "confinement" in an unrelated statute, R.C. 2929.01(P), the majority held that a defendant subject to house arrest qualifies for jail-time credit *964 for purposes of being "confined" pursuant to R.C. 2967.191.
{¶ 6} In a well-reasoned dissent, Judge Robert A. Hendrickson determined that the statutory definition of house arrest should not be dispositive when deciding if one is subject to jail-time credit while on house arrest. Rather, Judge Hendrickson's dissent focused on the different ways the word "confinement" has been treated by the legislature, and that a sentencing court's final determination should be based on "circumstances surrounding the restraint of the defendant's physical movements without regard to whether the defendant's movements may constitute a violate of probation or community control." Fillinger , 2016-Ohio-8455, 72 N.E.3d 671, at ¶ 23. The circumstances by which conditions are imposed upon an individual identify the extent to which a person was subject to the control of others and liberties restrained. See State v. Napier , 93 Ohio St.3d 646, 758 N.E.2d 1127 (2001).[2]
{¶ 7} Having considered the matter en banc, we find that Porter's accountability to a designated location (his home) is not tantamount to confinement associated with the loss of liberties and the restraint of choices the same as, or similar to, being confined in jail. While on house arrest, Porter was not subject to the direct control of officials of a government facility regarding his personal decisions and self-determination. We therefore hold that an individual subjected to house arrest may not be awarded jail-time credit for the time spent while exercising the freedoms of house arrest. This is because an individual's liberties, freedom of choices, and movement are not restrained to an extent reasonably associated with being "confined" in a facility.
{¶ 8} Being "confined" for purposes of jail-time credit as found in R.C. 2967.191 does not allow for employment at will and living at other premises as does house arrest "confinement" found in R.C. 2929.01(P). A plain reading of the statutes should not be "construed" as the dissent does, as having the same meaning. The dissent reaches its interpretation via its judicial determination of legislative intent. We remain unpersuaded to follow such a path.
{¶ 9} Porter had significant and substantial freedom from restraint while on house arrest. Thus, jail-time credit was improperly given to Porter for the time he was on house arrest. As previously stated in Porter , and now upheld after en banc consideration, this court overrules our prior decision in State v. Fillinger to the extent that it permits jail-time credit for those on house arrest.
{¶ 10} The record herein is undisputed that Porter's freedom was minimally restrained while he was subject to house arrest. Throughout the final probation hearing, testimony revealed that Porter wore an electronic monitoring device that merely beeped when he moved away from the beacon, but such monitoring did not *965 stop him from leaving his home. During the time that Porter was under house arrest, he even moved residences from staying with a friend to moving into a long-term motel with his girlfriend.
{¶ 11} In fact, nothing about Porter's house arrest was consistent with traditional confinement. Porter's personal liberties were not curtailed, as he was not physically restrained, and instead, was merely monitored from afar by the probation department or court services. Porter was not locked in his home or subject to shackles or restraints. Porter controlled his own schedule, including moving freely about, choosing his roommates, planning meals, welcoming guests, and doing whatever he wanted, whenever he wanted. In fact, Porter violated his community control while living on house arrest for using cocaine.[3]
{¶ 12} Porter could have left his home at any time, as it was not locked or protected by probation or court services in any manner. Simply by choice, Porter could go anywhere, and do anything, because he was never "confined." Porter was granted the comfort and convenience of residing at home and later at a motel with his girlfriend. Such is not equivalent to being subject to moment-to-moment control by officials regarding personal liberties. The individual autonomy one experiences when required to be at a certain location, like house arrest, with all of its freedom and other choices, cannot remotely be compared to the substantial restrictions imposed by the confinement found in a government-operated facility.
{¶ 13} We note the dissent attempts to obtain the same result it reached in Fillinger . Yet, the law is not devoid of common sense, nor is R.C. 2967.191 to be denied its plain reading. Being "confined" within the statute does not include house arrest confinement. The dissent employs statutory construction suggesting a plain reading of the statute aids it in interpreting legislative intent. Yet, there is no need to employ statutory construction or look to "intent" if the words of the statute are plain and unequivocal. It is incongruous to search for legislative intent using statutory construction if a plain reading of the statute can be applied. As the dissent itself reveals in its recitation of interwoven case law and statutes, it cannot avoid the remaining fact that R.C. 2967.191 does not expressly provide that an offender is entitled to jail-time credit for house arrest, particularly as defined under another statute.
{¶ 14} We note that none of the examples of being "confined" for which one is entitled to jail-time credit include circumstances that equate to the "confinement" as defined in the house arrest statute. The dissent suggests that the two different statutes carry the same meaning via a gymnastic exercise of statutory construction, and ironically "construes" its interpretation under the guise of "judicial restraint" and legislative deference. The dissent's vainglorious pronouncement that it alone applies R.C. 2967.191"as written," rings hollow.
{¶ 15} While Porter may have faced consequences for his choice to leave his house, such consequences for disobeying a court *966 order were no more akin to confinement than his original decision to violate the terms of his community control. Simply stated, Porter was able to conduct his life however he chose, make decisions regarding when and what he was going to do, and was even able to choose where and with whom he lived. Thus, Porter was not confined during the time he was subject to house arrest for the purposes of R.C. 2967.191, and the trial court erred by granting Porter 96 days of jail-time credit.
{¶ 16} To secure and maintain uniformity of the court's decisions, the court hereby confirms and adopts the holding in State v. Porter , 12th Dist. Warren, 2018-Ohio-3123, 106 N.E.3d 125, as the en banc decision of the court on the issue of whether time served under house arrest constitutes confinement for purposes of determining jail-time credit. We further overrule State v. Fillinger , 12th Dist. Madison, 2016-Ohio-8455, 72 N.E.3d 671, to the extent it permits jail-time credit for time served under house arrest.
S. POWELL, P.J., HENDRICKSON and PIPER, JJ., concur.
RINGLAND and M. POWELL, JJ., dissent.

This court has unanimously determined that no jail-time credit may be awarded for time subject to curfew. State v. Bowling , 12th Dist. Warren, 2017-Ohio-8539, 88 N.E.3d 965. As such, Porter's original appeal specific to his being denied jail-time credit while subject to curfew is not a matter subject to this en banc consideration and will not be addressed in this opinion.

The dissent suggests that Porter I relied upon "dubious" authority when citing Nagle , Napier , Blankenship , and Tabor . However, even a cursory review of Porter I demonstrates that those cases were discussed when addressing the issue of curfew , not house arrest. While Porter I and the majority herein discuss the general rule from Napier that circumstances control a determination of confinement, such general rule did not form the basis of the analysis for Porter I or our current majority. As stated in the previous footnote, this court, including the dissenting members, has been unanimous on the issue of curfew and that no jail-time credit may be awarded to those subject to a curfew, and the curfew issue was not before this court en banc. As such, the dissent's disdain for cases cited in Porter I on an issue that is not before us is both unfounded and perplexing.

The dissent cavalierly dismisses the differences in the types of confinement as being "mental imagery," yet, the two statutes function separately and without reference to one another due to the significant differences of the various types of confinement. While R.C. 2967.191 gives examples of custodial confinement, house arrest "confinement," to the extent it exists, clearly entails much greater freedom in self-governance. House arrest is a given opportunity with a very limited inconvenience, which one undertakes in order to avoid the much greater intrusion of a lock-down facility.