**[Cite as *State v. Reed*, 2019-Ohio-1266.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                          Court of Appeals No. E-17-037

      Appellee                                     Trial Court No. 2014-CR-509

v.

Eric Reed                                             **DECISION AND JUDGMENT**

      Appellant                                    Decided:  April 5, 2019

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Anthony A. Battista III, Assistant Prosecuting Attorney,
for appellee.

Brian A. Smith, for appellant.

* * * * *

**SINGER, J.**

### Introduction

{¶ 1} Appellant, Eric Reed, appeals the July 11, 2017 judgment of the Erie County

Court of Common Pleas revoking his community control and imposing a five-year

sentence for participating in a criminal gang in violation of R.C. 2923.42(A), a felony of

the second degree. For the reasons that follows, we reverse the judgment and remand the matter to the trial court for resentencing.

## Assignment of Error

The trial court committed reversible error by failing to give all required jail time credit to Appellant.

## Background

{¶ 2} On December 18, 2014, appellant was indicted on three counts: participating in a criminal gang in violation of R.C. 2923.42(C); aggravated rioting in violation of R.C. 2917.02(A)(2); and assault in violation of R.C. 2903.13(A).

{¶ 3} On July 14, 2015, appellant entered a guilty plea to the participating in a criminal gang charge. The remaining counts were dismissed, and the prosecution recommended community control sanctions.

{¶ 4} On August 25, 2015, a sentencing hearing was held and appellant was sentenced to five years community control.

{¶ 5} Appellant was to comply with certain conditions while on community control, including to obey federal, state and local laws and ordinances. Appellant violated this condition because he committed aggravated burglary, burglary, or assault, in November 2016, as charged in Erie C.P. case No. 2017-CR-0012.

{¶ 6} The trial court found probable cause existed, and a hearing was scheduled for January 6, 2017. The hearing was continued numerous times and was held on July 7, 2017. Appellant admitted, and the trial court found, that he violated his conditions.

2.

{¶ 7} The trial court set the matter for sentencing on July 10, 2017. At the hearing, appellant's counsel requested the court decide whether electronic monitoring or standard house arrest is to be credited as days of confinement. The court denied applying credit for the electronic monitoring or standard house arrest, and subsequently proceeded to sentence appellant after revoking his community control.

{¶ 8} The court sentenced appellant to five years in prison, and gave him 316 days of credit for time served as of July 10, 2017. The judgment was journalized July 11, 2017, and appellant now appeals.

## Analysis

{¶ 9} In his sole assignment of error, appellant asserts the trial court failed to properly apply 171 days of confinement credit to his sentence in accordance with *State v. Holmes*, 6th Dist. Lucas No. L-08-1127, 2008-Ohio-6804. Appellee contends that appellant's postconviction house arrest was not a restraint on his liberty such that he could not come and go on his own volition.

{¶ 10} R.C. 2949.08(C)(1) relevantly provides:

> If [a] person is sentenced to jail for a felony or a misdemeanor, the jailer in charge of a jail shall reduce the sentence of a person delivered into the jailer's custody * * * by the total number of days the person was confined for any reason arising out of the offense for which the person was convicted and sentenced * * *.

*See Holmes* at ¶ 11.

3.

{¶ 11} The term "confinement" as used in R.C. 2949.08(C)(1), is synonymous with the term "detention" as defined in R.C. 2921.01(E). *See id*. at ¶ 12, citing *State v. Sutton*, 6th Dist. Lucas No. L-03-1104, 2004-Ohio-2679, ¶ 13.

{¶ 12} The statutory definition of detention once excluded "supervision and restraint incidental to probation, parole and release on bail." *Id*. at ¶ 15. However, the current statutory definition "clearly does not." *Id*. *See also* R.C. 2921.01(eff. Sept. 29, 2013).

{¶ 13} Appellant asserted below that he should be awarded confinement credit for time spent on house arrest. The prosecution argued no confinement credit should be awarded for the house arrest because it was imposed after appellant violated his community control. The trial court recognized *Holmes*, yet denied appellant's request.

{¶ 14} In *Holmes*, we reversed the trial court and held that Holmes was entitled to confinement credit for his time served on house arrest. Holmes specifically sought credit "for the 90 days time that he spent on electronic monitoring as part of his community control sentence." *Id*. at ¶ 8. We granted the credit. *Id*. at ¶ 20.

{¶ 15} Our analysis in *Holmes* initially consisted of an explanation of how electronic monitoring house arrest constitutes a form of detention pursuant to R.C. 2921.34. *Id*. at ¶ 17-18. We found this applied where electronic monitoring was imposed pursuant to community control. Then, we took the analysis a "step further," finding that in the interest of justice, "where an individual can be prosecuted for escape from electronic monitoring imposed pursuant to community control or probation, that individual should be entitled to credit for time served in that way." *Id*. at ¶ 19.

4.

{¶ 16} Based on our review, the record in this case demonstrates that appellant served days on house arrest after being sentenced to community control in September of 2015. Although the house arrest was not explicitly imposed in the trial court judgment, we hold that appellant is entitled to credit for those days he was confined because he could have been prosecuted for escape during that time when a condition of the court-imposed community control was to abide by what conditions the probation officer set, which the probation officer Gale testified included electronic monitoring and standard house arrest.

{¶ 17} Gale explained and testified in detail about the type and time period of restraint imposed on appellant, as follows:

[Appellant's counsel]: All right. And that's [(imposing house arrest)] something that you're allowed to do as a result of the Court originally putting Mr. Reed on probation, correct?

[Gale]: That's correct.

[Appellant's counsel]: Okay, all right. And so do you know when or what dates that you would have put Mr. Reed on electronic monitoring house arrest?

[Gale]: On electronic monitoring or standard house arrest?

[Appellant's counsel]: Well—

[Gale]: He was on both.

[Appellant's counsel]: Okay. So let me—let me go through the difference because I didn't realize there was a difference.

5.

[Gale]:  Okay.

[Appellant's counsel]:  So there's an electronic monitoring first, right?

[Gale]:  Correct.

[Appellant's counsel]:  Okay.  And what is that?

[Gale]:  Electronic monitoring is a bracelet they put around their ankle with GPS capabilities and then standard house arrest is a bracelet they wear around their wrist.  It's a lower level of supervision on house arrest.

[Appellant's counsel]:  All right.  So let's go with the electronic monitoring first.  What are the restrictions or how does that work?

[Gale]:  It depends on what they're allowed to do, what they're not allowed to do.  Some people are on total lockdown.  They can't leave their house except for Court appointments.

[Appellant's counsel]:  Okay.

[Gale]:  Mr. Reed was granted work privileges.  He could go to work.  He also asked to go to the bank on Fridays, I believe, to cash his check or do something with his finances.  And, of course, he was able to come see me, along with any type of counseling.

[Appellant's counsel]:  All right.  So absent those exceptions with the electronic monitoring, was he otherwise supposed to stay at a certain residence?

[Gale]:  Yeah, he was supposed to stay at his listed residence.

[Appellant's counsel]: Okay. All right. And besides authorizing him to go to work and to the bank, would he have to seek otherwise authorization to leave the residence otherwise?

[Gale]: Yes. He had a caseworker with LECCC that facilitates the house arrest and turns in schedules to her, because I know at one point he asked to work overtime and that was granted as well.

[Appellant's counsel]: All right. And this may sound silly, but with the electronic monitoring that's continuous, so there would not have been any breaks in that?

[Gale]: Well, he actually had a break, because he had come off of it—

[Appellant's counsel]: Okay, but while it— but while—

[Gale]: --and then was put back on again.

[Appellant's counsel]: I'm sorry. But while it was on, though, I mean, the fact is that that was continue— that was continuous in nature.

[Gale]: Yes, yes.

[Appellant's counsel]: All right. All right. And then while he was on the electronic monitoring, as you said before, he was still required to check in with you?

[Gale]: Yes.

[Appellant's counsel]: All right. All right. And then he— even though he's on electronic monitoring, besides checking in with you, he still

has to follow all the conditions that we talked about in Defendant's Exhibit A, correct?

[Gale]: That's correct.

[Appellant's counsel]: All right, okay. So can you tell me, then, do you know how long he was on the electronic monitoring?

[Gale]: Yes. He was originally placed on electronic monitoring on March 31st of 2016 until May 29th of 2016.

* * * [Appellant's counsel]: Okay. And then you talked about the fact that separate from electronic monitoring, then, is house arrest, correct?

[Gale]: Standard house arrest, correct.

[Appellant's counsel]: Standard house arrest.

[Gale]: Correct.

[Appellant's counsel]: All right. And for Mr. Reed, was he on standard house arrest then?

[Gale]: Initially he was, yes.

[Appellant's counsel]: Okay. And what does that entail then?

[Gale]: The same conditions, it's just you're not monitored by a GPS. It's a bracelet that's put on your wrist and it's kind of like at your word that you'll be home, and we send house arrest officers out to check on you randomly.

[Appellant's counsel]: So I want to be very clear about this. So then on standard house arrest he does not— he's got a bracelet, but I was going to say it's nothing that's electronically monitored, correct?

[Gale]: That's correct.

[Appellant's counsel]: But, otherwise, all of the conditions, though, for electronic monitoring apply, though, for standard house arrest.

[Gale]: That's correct.

[Appellant's counsel]: All right. And how long was he on standard house arrest?

[Gale]: From December 3rd, 2015 until March 31st of 2016, at which time he was placed on electronic monitoring that same day.

{¶ 18} Consistent with *Holmes*, Gale's explanation and testimony of the detention imposed precisely details the type of restraint on liberty we decided is to be credited as confinement. *See Holmes*, 6th Dist. Lucas No. L-08-1127, 2008-Ohio-6804, at ¶ 20. Accordingly, we hold that appellant is entitled to confinement credit for those days he was on electronic monitoring or standard house arrest, and his sole assignment of error is found well-taken.

### Conclusion

{¶ 19} For the foregoing reasons, the judgment of the Erie County Court of Common Pleas is reversed and the matter is remanded. The trial court is ordered to

9.

proceed in a manner consistent with this decision.  Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.  We note this decision is in conflict with, among others, the Twelfth District Court of Appeals in *State v. Porter*, 2018-Ohio-3123, 106 N.E.3d 125 (12th Dist.).  Pursuant to Ohio Constitution, Article IV, Section 3(B)(4), we sua sponte certify a conflict to the Supreme Court of Ohio for review and final determination.  The parties are directed to S.Ct.Prac.R. 7.01 and 7.08 for further proceedings.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.  _____
              JUDGE

Arlene Singer, J.

        _____
Thomas J. Osowik, J.        JUDGE
CONCUR.

        _____
              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.